# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## EASTERN DIVISION.

---

### SEPTEMBER TERM, 1920.

---

TENNESSEE CENTRAL RAILROAD COMPANY *et al. v.* PHILLIP
VANHOY[*].

(*Knoxville.* September Term, 1920.)

1. PLEADING. Permission to plaintiff to amend by including all averments of common-law negligence in one count not improper.

In an action for the death of plaintiff's wife, killed at a railroad crossing, the action of the trial court in allowing plaintiff to amend his declaration so as to put all averments of common-law negligence in one count, separating them from averments of statutory negligence, was not errorr. (*Post, pp.* 325, 326.)

2. APPEAL AND ERROR. Allowance of amendment as to common-law averments not prejudicial in view of submission of cause on statutory counts.

---

[*]On liability of owner or operator of automobile for injury to guest, see notes in 50 L. R. A. (N. S.), 1100; L. R. A., 1916E, 1190; L. R. A., 1918C, 276.

On excessiveness of verdicts for personal injuries resulting in death, see comprehensive note in L. R. A., 1916C, 820.

In a crossing accident case, permission to plaintiff to amend his declaration by putting all averments of common-law negligence in a separate count was not prejudicial, where the case was submitted only on the statutory count. (*Post, pp.* 325, 326.)

Code cited and construed: Sec. 1574, subsecs. 3, 4.

3. **RAILROADS.** Omission of statutory signals negligence.

Shannon's Code, section 1574, subsection 3, requiring the sounding of the bell or whistle when the train in one mile from town, and at short intervals until it reaches the depot, is mandatory, and a failure to comply with such requirement is negligence. (*Post, pp.* 326, 327.)

4. **RAILROADS.** Negligence in omiting statutory signals and lookout held question for jury.

In an action for the death of one riding in an automobile struck at a crossing, evidence *held* sufficient to carry to the jury the question of the railroad company's negligence in omitting the signals and lookout required by Shannon's Code, section 1574, subsections 3 and 4. (*Post, pp.* 326, 327.)

Cases cited and approved: Railroad v. Davis, 104 Tenn., 442; Graves v. Railroad, 126 Tenn., 164.

5. **TRIAL.** Verdict against joint tortfeasors must be joint.

In an action for the death of plaintiff's wife, killed while riding in an automobile which was struck by a train, where the jury first reported that they found in favor of plaintiff and assessed $5,000 damages against the railroad, company and $5,000 against the estate of the driver of the automobile, it was not error for the court to instruct that a joint verdict must be rendered, and, when the foreman, in response to questions, stated that it was for plaintiff for $10,000, to enter judgment on such verdict; neither defendant objecting to the receiving of the verdict or requesting the jury be polled. (*Post, pp.* 327-329.)

Case cited and approved: Railway & Light Co. v. Trawith, 118 Tenn., 273.

6. **APPEAL AND ERROR.** Presumption that court charged correctly.

Where the record did not show the court's instructions on an issue, it will be presumed that the court correctly charged the jury. (*Post*, *p.* 329.)

7. **TORTS.** Railroad company and driver of motorcar held joint tort-feasors.

Where the driver of an automobile was negligent in proceeding over a railroad crossing, and the railroad company's servants in charge of a train which struck the automobile were also negligent in failing to give warning signals or to maintain a lookout, both the driver and the company are liable as joint tort-feasors to a guest in the car who was injured; their concurrent negligence producing the injury. (*Post*, *pp.* 329-333.)

Cases cited and approved: Colegrove v. Railroad Co., 20 N. Y., 492; Railroad Co. v. Shacklett, 105 Ill., 364; Electric Railway Co. et al v. Shelton, 89 Tenn., 423.

Cases cited and distinguished: Swain v. Tennessee, Copper Co., 111 Tenn., 430; Snyder v. Witt, 99 Tenn., 618.

8. **APPEAL AND ERROR.** Request to charge must be made part of record by bill of exceptions.

Where requests to charge were not incorporated in the bill of exceptions but were only set out in the motion for new trial, they are not part of the record, and the propriety of refusing the same will not be considered. (*Post*, *p.* 333.)

9. **APPEAL AND ERROR.** Presumed that charge covered the law of the case.

Where defendant assigned as error the refusal of a request to charge, but the charge of the court was not made part of the record, it will be presumed by the appellate court that the charge covered the law of the case and was correct. (*Post*, *p.* 333.)

Cases cited and approved: Frazier v. State, 117 Tenn., 430; State v. Robinson, 106 Tenn., 184; Railroad v. House, 96 Tenn., 552;) Temple v. State, 127 Tenn., 429.

Tennessee Cent. R. Co. v. Vanhoy.

10. **APPEAL AND ERROR.** Question of propriety of refusal to allow plea to jurisdiction not presented.

An assignment of error by one of the defendants, complaining that the court erred in refusing to allow withdrawal of a plea of not guilty and the filing of a plea to the jurisdiction, need not be considered, where it did not appear that a plea to the jurisdiction was tendered with the motion, or, if tendered, it was not made a part of the record. (*Post, pp.* 333, 334.)

11. **PROCESS.** Where service is had on one defendant, counterpart summons against others may be issued to any other county.

Where service of process was had on one of the defendants in the county where action was brought, counterpart summons might be issued so as to give the court jurisdiction over other defendants residing in other countries. (*Post, pp.* 333, 334.)

12. **APPEAL AND ERROR.** Facts supporting assignment of error must appear from bill of exceptions, and not motion for new trial.

An assignment of error, complaining that the trial judge allowed the jury to take out and have before it maps and photographs offered in evidence while they were considering their verdict, will be overruled, where the bill of exceptions failed to disclose that any such thing occurred, and it only appeared in a motion for new trial. (*Post, p.* 334.)

13. **CARRIERS.** Negligence of voluntary carrier held for jury.

In an action against a railroad company and the driver of a motorcar which was struck by a train, brought by a husband for the death of his wife, a guest in the car, evidence *held* sufficient to carry to the jury the question of the negligence of the driver of the car. (*Post, pp.* 334, 335.)

14. **CARRIERS.** Voluntary carrier's duty stated.

One who invites another to ride in his automobile must exercise ordinary care not to increase the danger of such undertaking or to create new dangers, and will be liable to the person so invited for injuries caused by his failure to exercise ordinary care for his guest's safety. (*Post, pp.* 335-338.)

Cases cited and approved: Patnode v. Foote, 153 App. Div., 494; Fitzjarrell v. Boyd, 123 Md., 497; Harvey v. Deep River Logging Co., 49 Or., 583; Wagner v. Missouri P. R. Co., 97 Mo., 512; Wilton v. Middlesex R. Co., 107 Mass., 108; Jacobs v. Jacobs, 141 La., 272; Turnpike Company v. Yates, 108 Tenn., 428.

Cases cited and distinguished: Beard v. Klusmeier, 158 Ky., 153; Perkins, Adm'x, etc., v. Galloway, 194 Ala., 265.

15. **CARRIERS.** Care required of guest of voluntary carrier stated.

While ordinarily a guest in an automobile may rely on the assumption that the driver will exercise proper care and precaution, yet if the guest sees a danger which is not obvious to the driver, he should give warning; likewise where the guest has superior opportunity to see dangers the driver should be warned, etc. (*Post, pp.* 338-340.)

Cases cited and approved: Shultz v. Old Colony St. R. Co., 193 Mass., 309; Colorado, etc., R. Co. v. Thomas, 33 Colo., 517.

Cases cited and distinguished: Knoxville Railway & Light Co. v. Vangilder, 132 Tenn., 489; Hurt v. Y. & M. V. R. Co., 140 Tenn., 623.

16. **CARRIERS.** Negligence of guest of voluntary carrier question of fact.

Ordinarily the question of the negligence of guest in the motorcar in failing to observe dangers, etc., is for the jury. (*Post,, p.* 340.)

Cases cited and approved: Clarke v. Connecticut Co., 83 Conn., 219; Corley v. Railroad, 90 Kan., 70; Cladbourne v. Springfield St., R. Co., 199 Mass. 574; Wilson v. Electric R. Co., 52 Wash., 522.

17. **DEATH:** Negligence of deceased guest in motorcar held for jury.
In an action brought against a railroad company and the driver of a motorcar for the death of plaintiff's wife, a guest in the car which was struck by a train, the question whether the wife was guilty of negligence in failing to see and observe the train *held* for the jury. (*Post, pp.* 340, 341.)

18. **DEATH.** $10,000 for death of wife not excessive.

> When plaintiff's wife was 21, in good health, and performed all of the duties incidental to keeping plaintiff's house, an award of $10,000 for her death cannot be deemed excessive. (*Post, pp.* 341, 342.)

FROM CUMBERLAND. ·

Appeal from the Circuit Court of Cumberland County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. C. E. SNODGRASS, Judge.

J. W. DORTON, and GEO. P. BURNETT,· for Tennessee Central R. Co., and Receivers, etc.

O. K. HOLLADAY, for administrators of J. T. Hitshew.

E. G. TOLLETT, for Phillip Vanhoy.

MR. JUSTICE HALL delivered the opinion of the Court.

An action of damages brought by Phillip Vanhoy, as surviving husband of Ida Vanhoy, deceased, against the Tennessee Central Railroad Company, W. K., McAlister, and H. W. Stanley, receivers, and N. G. Hitshew and G. W. Thauscher, as administrators of the estate of J. T. Hitshew, deceased, to recover for the alleged negligent killing of his wife on August 4, 1917, at a grade crossing of the Tennessee Central Railroad Company within the corporate limits of the town of Crossville, Tenn.

For convenience the parties will be referred to in this opinion according to their *status* in the court below; that is, plaintiff and defendants.

A trial of the case in the court below before the court and a jury resulted in verdict and judgment against all of the defendants in favor of the plaintiff for the sum of $10,000 damages, from which judgment said defendants appealed to the Court of Civil Appeals, after their motions for a new trial had been overruled.

The hearing of the case by that court upon the appeal of the defendants resulted in an affirmance of the judgment of the trial court, and the case is now before this court on petitions of the defendants for writs of *certiorari,* which which have been heretofore granted, and the case held for further consideration.

The accident, which resulted in the death of the plaintiff's wife, Mrs. Ida Vanhoy, grew out of a collision between the automobile in which she was riding and a passenger train of the Tennessee Central Railroad Company at a point where the public road known as the Memphis to Bristol Highway crosses the railroad track within the corporate limits of the town of Crossville. The automobile was owned and was being driven by J. T. Hitshew, and in which, at the time of the accident, were six ladies, all invited guests of the said Hitshew. As a result of the collision, Mr. Hitshew and four of the ladies, including Mrs. Vanhoy, were killed, and the other two were seriously injured.

Mrs. Vanhoy was a young woman about twenty-one years of age, and had been married to the plaintiff about

Tennessee Cent. R. Co. v. Vanhoy.

one year at the time she was killed. At the time of the accident the automobile was being driven in a southeasterly direction from Crossville towards Dorton along the Memphis to Bristol Highway, the purpose of the trip being to take Mrs. Hedgecoth, one of the party, as far as the town of Dorton, which is located four miles east of Crossville, on her way home, she living about a mile and a half from Dorton. Mrs. Hedgecoth's home could not be reached by an automobile from Dorton, owing to the condition of the roads. Mrs. Hedgecoth had walked to Crossville that morning to be present at the departure of a company of volunteer soldiers who had trained for several months, and were going to depart on that day to an army camp, and she intended to return to Dorton on the train, but upon the suggestion of J. T. Hitshew that he would take her in his car as far as Dorton she accepted his invitation, and thereupon Mr. Hitshew invited the other ladies to accompany them upon the trip, and it was in this way that Mrs. Vanhoy became a passenger in the Hitshew automobile. Mr. Hitshew was a friend of Mrs. Vanhoy's uncle, and was visiting at his home in Crossville at the time. Many people had assembled in Crossville on that day for the purpose of paying their respects to the departing soldiers. There was also a carnival in progress there at the same time, and these functions were the occasion of much travel by rail and on the highways and streets of the town.

At the time of the collision Mr. Hitshew and one of the ladies, Miss Dorothy Dayton, were on the front seat, and Miss Dorothy's sister, Mabel, was seated on the right front

door of the automobile, facing in a northerly direction, with her back turned to the direction from which the train approached that struck the automobile. Mr. Hitshew was seated on the left side of the front seat. Mrs. Vanhoy was seated on the right side of the rear seat. A Miss Cox was seated next to her, and a Miss Hughes was seated on the left side of the rear seat, and Mrs. Hedgecoth was sitting on the laps of Miss Cox and Miss Hughes. The evidence tends to show that some laughing and talking were being indulged in by at least some of the members of the party. The top of the automobile was up. The highway approaching the grade crossing from Crossville is in a hollow, and the railroad emerges from a deep cut with steep banks directly at the crossing on the right-hand side, but the railroad at the crossing, and for 200 or more feet southwest of the crossing, is plainly visible from the highway to a person driving an automobile or other vehicle; and the highway, with the exception of some holes or scooped-out places in the track between the cross-ties at the crossing, was in good condition for driving automobiles or other vehicles over it. The bank of the cut, and the bushes and weeds growing on it, completely obstructed the view of the occupants of the automobile, including those on the front seat, preventing them from seeing the train, which was approaching from the southeast and going in the direction of Nashville, until the automobile was within twenty or twenty-five feet of the railroad track, and then could only be seen through the open space between the planks of the stock-gap fence,

which is situated on the right-hand side of the highway only a few feet from the crossing. Mrs. Vanhoy being seated on the right side of the rear seat next to the bank of the cut, her view in looking in the direction from which the train was coming was obstructed until the automobile was within from ten to fifteen feet of the track. The automobile was being driven by Mr. Hitshew at the rate of about fifteen miles per hour as it approached the crossing. He did not bring the automobile to a stop or check its speed before going upon the railroad track, and the evidence tends to show that no member of the party saw the approaching train till the automobile was within about ten feet of the track. It appears that some member of the party, the evidence does not show who, exclaimed a moment before the collision, "Look out, there comes a train!" but the automobile was struck almost instantly after this exclamation was made. It was struck about its center, and was carried for some distance on the pilot of the locomotive.

The engineer did not see the automobile until after the collision occurred. He being seated on the right-hand side of the locomotive, he says the nose of the locomotive obstructed his view and prevented him from seeing the automobile when it appeared upon the track. He says, however, that he was on the lookout ahead at the time of the collision.

The fireman testified that he was seated on the left-hand side of the locomotive, which was the side from which the automobile approached the crossing, and that he was also

143 Tenn.—21

on the lookout ahead, and saw something appear on the track at the crossing in front of the locomotive, but he says he did not know what it was, and thought that it passed over the crossing in safety, and he did not know that there had been a collision until the train had run some distance northwest of the crossing.

The speed at which the train was running is estimated by the witnesses at from thirty-five to fifty miles per hour, and it ran about 600 feet northwest of the crossing after the collision before it was brought to a stop.

The plaintiff's original declaration was filed on June 15, 1918, and the defendants filed pleas of not guilty to the same on July 6, 1918.

On February 7, 1919, the date upon which the case was called for trial, the defendants administrators asked leave to withdraw their plea of not guilty, and to be permitted to file a plea to the jurisdiction of the court upon the ground that they were citizens of Putnam county, and could not be sued in said action in Cumberland county. This motion of the administrators was overruled by the court, and exceptions were taken.

Thereupon the defendants railroad company and receivers, over the objection of the plaintiff, were permitted by the court to withdraw their said plea of not guilty, and interpose a motion to strike from the several counts of the declaration all allegations of common-law negligence on the ground that the declaration was bad for duplicity; it charging both statutory negligence and common-law negligence in the same counts.

Thereupon the plaintiff was granted leave by the court to amend his declaration so as to transpose all averments of common-law negligence as to said defendants from the second to the third count, to which action of the court said defendants excepted.

Thereupon the administrators of J. T. Hitshew renewed their application to be permitted to file their plea to the jurisdiction of the court, and the same was again overruled. This application was merely oral, and no plea to the jurisdiction was ever tendered to the court by said administrators with either of said applications.

Subsequently, on the same day, on motion of the plaintiff, leave was granted him to file an amended declaration setting forth his cause of action, to which there was no objection upon the part of the defendants, and they were granted leave to plead to the amended declaration by filing pleas of not guilty thereto.

The first and third counts of said declaration aver common-law negligence.

The second count avers that the defendant railroad company and its receivers were operating the train, which collided with the automobile in which the plaintiff's wife was riding, in violation of subsections 3 and 4 of section 1574 of Shannon's Code, prescribing certain precautions for the prevention of accidents upon railroads.

Subsection 3 of said section provides that a train, on approaching a city or town, shall sound the bell or whistle when it is at the distance of one mile, and at short intervals till it reaches its depot or station; and on leaving a town or city, the bell or whistle shall be sounded when the

train starts, and at intervals till it has left the corporate limits.

Subsection 4 of said section provides that every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead, and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident.

The negligence averred against the intestate of the defendants administrators is that he failed to observe due and proper care and caution in approaching and entering upon the railroad crossing where the accident occurred, and in failing to keep a proper lookout for approaching trains.

The declaration averred that the death of the plaintiff's wife was the direct and proximate result of the joint and concurrent negligence of the defendant railroad company and the administrators' intestate, J. T. Hitshew.

The defendants railroad company and receivers have assigned five errors in this court to the judgment of the Court of Civil Appeals.

The first is to the effect that the Court of Civil Appeals erred in not properly construing the purpose of their third assignment of error made in that court, which was to the effect that the trial court committed error in not striking all of the averments of common-law negligence in the declaration on their motion, instead of permitting plaintiff to amend his declaration by putting all averments of common-law negligence in a separate count.

By their second assignment of error it is insisted that the Court of Civil Appeals erred in not sustaining their assignment made in that court to the action of the trial judge in refusing to direct a verdict in their favor at the conclusion of all the evidence; there being no material evidence introduced that would support a verdict against said defendants.

By their third assignment of error it is insisted that the Court of Civil Appeals erred in overruling their assignment made in that court, to the effect that the trial judge committed error in declining to accept the verdict of the jury as first reported, in which they undertook to apportion the damages between both sets of defendants.

By their fourth assignment of error it is insisted that the Court of Civil Appeals erred in overruling their assignment made in that court, to the effect that the railroad company and administrators of the estate of J. T. Hitshew were not joint tort-feasors, and therefore no recovery could be had against them jointly for the alleged wrongful killing of the plaintiff's wife.

By their fifth assignment it is insisted that the Court of Civil Appeals erred in not holding that the verdict was excessive.

We are of the opinion that none of these assignments are well grounded. We do not think that there was any error in the action of the trial judge permitting the plaintiff to amend his declaration so as to put all averments of common-law negligence in a separate count. We think this action of the court was proper. Furthermore, it is not pointed out wherein or how the defendants were prej-

udiced by this action of the court. The court submitted the case to the jury alone upon the statutory count.

As to the contention of the defendants that the Court of Civil Appeals should have sustained their assignment of error to the action of the trial judge in refusing to direct a verdict in their favor at the conclusion of the evidence:

. We think there was ample evidence introduced before the jury which warranted the court in submitting the question of the defendants' negligence to the jury. There was evidence offered by the plaintiff tending to show that the railroad company violated both subsections 3 and 4 of section 1574 'of Shannon's Code.. Evidence was offered by the plaintiff tending to show that the train, at the time the automobile entered upon the track, was about 100 feet southeast of the stock gap, which was located about thirty feet southeast of the crossing, thus making the train 130 feet away when the automobile appeared as an obstruction on the track, and no effort was made by the trainmen to bring the train to a stop and prevent the accident. The evidence shows that the track was straight for a distance of 492 feet southeast of the crossing, and there was nothing to prevent the engineer from seeing the automobile at a distance of 130 feet before the locomotive reached the crossing, if he had been on the lookout ahead. Furthermore, there is material evidence in the record tending to show that said defendants did not comply with subsection 3 of section 1574, in that they failed to sound the bell or whistle a mile from the corporate limits of the town of Crossville, and at short intervals until the train

reached the depot or station, as required by said section. This statute is mandatory, and failure to comply with it rendered the defendants liable for damages. *Railroad* v. *Davis,* 104 Tenn., 442, 58 S. W., 296; *Graves* v. *Railroad,* 126 Tenn., 164, 148 S. W., 239.

We think it appears from the testimony of the fireman, engineer, and conductor, as well as from the testimony of other witnesses, that this section of the statute was not complied with; in fact, we do not understand that it is seriously insisted by the defendants that this section of the statute was complied with.

As to the insistence of the defendants railroad company and receivers that the Court of Civil Appeals erred in not sustaining their assignment made in that court to the action of the trial court in refusing to receive the verdict of the jury as first reported, in which they undertook to apportion the damages between the two sets of defendants:

This assignment is also made by the administrators of the estate of Mr. Hitshew.

The record discloses that the jury first reported that they found in favor of the plaintiff and against the defendants, and had assessed $5,000 against the railroad company, and $5,000 against the estate of the deceased Hitshew. The court thereupon said to the jury, "In other words, you find against both defendants?" To this question the foreman answered, "Yes." The court then stated to the jury that they could not apportion the verdict, but that their verdict should be returned jointly against all of the defendants found liable. Thereupon the fore-

man of the jury answered, "That is what we have done."
The court then asked, "What is the amount of your ver-
dict?" The foreman then answered: "$10,000 against the
defendants and in favor of the plaintiff." This verdict
was received by the court without objection upon the part
of the defendants. There was no request made by the de-
fendants to have the jury polled for the purpose of as-
certaining if the verdict were assented to by all the ju-
rors. The verdict was accepted and recorded as a joint
verdict against all of the defendants, and the jury dis-
charged, as before stated, without any objection or ques-
tion being raised by the defendants as to the validity
or correctness of the verdict. We are of the opinion that
the trial judge was correct in instructing the jury that
they could not apportion the verdict, but that they must
return a joint verdict against all of the defendants found
liable.

In *Railway & Light Co.* v. *Trawick,* 118 Tenn., 273, 99
S. W., 695, 10 L. R. A. (N. S.), 191, 121 Am. St. Rep.,
996, 12 Ann. Cas., 532, it was held by this court that where
two or more parties are sued jointly for personal injuries,
trespass, or other tort, and both or all are found guilty,
the jury cannot assess several damages against each de-
fendant, but the damages must be assessed jointly, against
all found guilty jointly, although all may not be equally
culpable.

It was also held in that case that where, in an action
against two parties sued jointly for personal injuries, a
verdict is found and returned in favor of plaintiff against

both defendants, but improperly assessing several damages, and judgment is entered against each defendant for the separate sums so assessed, the court may, on motion of plaintiff, even after judgment is entered, dismiss the case, as to one defendant, after granting a new trial as against him, and render judgment against the other alone for the amount of the verdict awarded against him.

As to the fourth contention of the defendants railroad company and receivers that the Court of Civil Appeals erred in overruling their assignment of error made in that court, to the effect that the trial judge committed error in charging the jury upon the question of the joint liability of the defendants as joint tort-feasors, and in entering a joint judgment against them, when there was no proof introduced calling for such a charge:

The charge of the court is not made a part of the record, and we cannot know just what the court did instruct the jury upon this question. We must therefore presume that the court instructed the jury correctly.

It is insisted by the defendants that the evidence failed to show that the defendants were joint tort-feasors, and therefore they were not jointly liable, and a joint verdict and judgment could not be rendered against them.

They cite in support of this contention the case of *Swain* v. *Tennessee Copper Co.*, 111 Tenn., 430, 78 S. W., 93, in which case it was held that a tort which is several when committed cannot be made joint by matters occurring subsequently over which the wrongdoer has no control, and that the mere union and blending of consequences

will not have the effect to make torts' originally several joint.

The facts in that case are not analogous to the facts in the instant case. The facts in that case showed that the defendants were separate and distinct corporations located in proximity to each other, and were operating their respective plants for reducing and converting copper ores into ingots or commercial copper, from each of which were emitted immense volumes of noxious, foul, and poisonous smoke and gases, which afterwards indistinguishably mingled, commingled, and intermingled into clouds of noxious, deadly, and poisonous vapors, creating an actionable nuisance, but there was no common ownership or operation of the plants, no community of interest, nor common design, purpose, concert, or joint action. In other words, the acts which caused damage to the plaintiff's property were separately committed, while in the instant case evidence was offered tending to show that the plaintiff's wife was killed as the result of the concurrent negligence of both sets of the defendants sued. The evidence tended to show that Mr. Hitshew was negligent in running his car upon the railroad track at a dangerous crossing, where his vision was obstructed to such an extent that he could not see the approaching train till within a few feet of the track, without stopping, looking, and listening for the approach of the train. The defendants railroad company and receivers were negligent in that they failed to comply with the statutory precaution for the prevention of accidents upon railroads. It was through

the joint and concurrent negligence of both sets of defendants that plaintiff's wife was killed.

In *Snyder* v. *Witt*, 99 Tenn., 618, 621, 42 S. W., 441, 442, this court said: "The next question presented is, Do the facts alleged make these defendants tort-feasors with Griffin, the owner of the ice wagon, and does a settlement with him, as one joint tort-feasor, release the other wrongdoers? Cooley on Torts (2 Ed.), 684, states the law to be that the negligence of third persons, concurring with that of defendant to produce an injury, is no defense, but only renders the third party liable as a joint tort-feasor. Shearman & Redfield on Negligence, section 122, states the law to be, 'All persons who co-operate in an act directly causing injury are jointly liable for its consequences if they acted in concert, or unite in causing an injury, even though acting independently of each other.' See, to the same effect, Hilliard on Remedies for Torts, 170; *Colegrove* v. *Railroad Co.*, 20 N. Y., 492; *Railroad Co.* v. *Shacklett*, 105 Ill., 364."

In *Swain* v. *Tennessee Copper Co.*, *supra*, this court said: "When a tort is committed by two or more persons jointly, by force directly applied, or in the pursuit of a common purpose or design, or by concert, or in the advancement of a common interest, or as the result and effect of joint concurrent negligence, there is no doubt but that all the tort-feasors are jointly and severally liable for all the damages done the injured party, and that these damages may be recovered in joint or several actions, although the wrongful conduct or negligence of some may

have contributed less than that of others to the injury done. . . . But this is not the rule where the tort-feasors act independently of each other, without community of interest or concert of action, or common design or purpose, or concurrent acts of negligence, or where the injury is not the result of force directly applied, but the consequential effects of the wrongful conduct or negligence constituting a nuisance."

"In instances where the wrongful acts of two or more persons concur as proximate causes of an injury, the wrong-doers are liable jointly or separately, and the fault of one is no defense for the other or others. 2 Thomp. Neg. 1088."

In *Electric Railway Co. et al.* v. *Shelton,* 89 Tenn., 423, 14 S. W., 863, 24 Am. St., Rep., 614, it was held that both the Electric Railway Company and the Telegraph Company were liable for the value of a horse killed belonging to the plaintiff by coming in contact with a broken wire of the Telegraph Company, it appearing that the Telegraph Company had negligently permitted its broken wires to fall and remain upon the trolley wire of the Electric Railway Company, and that the latter company had failed to place guard wires over the trolley wire as a protection against accidents, and to observe the condition of the broken telephone wire; it being such as to arrest the attention of a prudent man engaged in the business of either company.

As to the contention of the defendants railroad company and receivers that the verdict of the jury is excessive:

This contention is also urged by the administrators of the estate of Mr. Hitshew, deceased, and will be disposed of later in this opinion.

We will now dispose of the assignments of error made separately by the administrators of Mr. Hitshew, deceased, and which have not heretofore been disposed of.

By their first assignment of error it is insisted that the Court of Civil Appeals erred in refusing to consider assignments from 4 to 10, inclusive, made in that court, predicated upon the trial court's refusal to give certain special requests in charge to the jury, and in refusing to consider assignment 15, based upon an alleged erroneous instruction contained in the trial court's general charge.

We are of the opinion that the Court of Civil Appeals did not commit error in refusing to consider these assignments. The charge of the court was not made a part of the bill of exceptions. Neither were the special requests referred to in said assignments. They are only set out in the motion for a new trial. This does not make them a part of the record. The motion for a new trial is not the action of the court. It is only the statement of the mover, and the facts therein cited may or may not be true. *Frazier* v. *State,* 117 Tenn., 430, 100 S. W., 94. The charge of the court not having been made a part of the record, this court will presume that the charge covered the law of the case and was correct. *State* v. *Robinson,* 106 Tenn., 184, 61 S. W., 60; *Railroad* v. *House,* 96 Tenn., 552, 35 S. W., 561; *Temple* v. *State,* 127 Tenn., 429, 155 S. W., 388.

By their second assignment of error the administrators complain of the action of the Court of Civil Appeals in overruling their fourteenth assignment, made in that court, which challenged the correctness of the trial court's ac-

tion in refusing to allow them to withdraw their plea of not guilty and file a plea to the jurisdiction of the court on the ground that they were citizens of Putnam county, and were sued in Cumberland county.

A sufficient answer to this assignment is that no plea to the jurisdiction of the court was tendered with the motion, or, if tendered, it is not made a part of the record. Furthermore, we are of the opinion that to have allowed such a plea to have been filed would have been error. Service of process having been had on the Tennessee Central Railroad Company in Cumberland county, jurisdiction of the administrators could be acquired by the issuance of a counterpart summons to any county in the State. Therefore, if the defendants had been permitted to file said plea, it could not have availed them anything.

It is next assigned as error by the administrators that the Court of Civil Appeals erred in not holding that the trial judge committed error in permitting the jury to take out and have before it the maps and photographs offered in evidence while they were considering their verdict.

A sufficient answer to this assignment of error is that the bill of exceptions fails to disclose that any such thing occurred. This only appears in the motion for a new trial, and therefore the assignment cannot be considered.

It is also insisted by the administrators that the Court of Civil Appeals erred in not holding that the trial judge committed error in not directing a verdict in favor of the administrators, because there was no evidence tending to

show that their intestate was guilty of any negligence; but, if he were, the undisputed evidence shows that Mrs. Vanhoy was guilty of contributory negligence that would bar the plaintiff's right to recover.

We are of the opinion that this assignment of error is not well grounded. We think the question of Mr. Hitshew's negligence, as well as the question of the contributory negligence of Mrs. Vanhoy, were questions properly determinable by the jury. We do not think that this court would be warranted in saying, as a matter of law, that Mr. Hitshew was not guilty of negligence in driving his car upon the railroad track at this highly dangerous crossing without stopping, looking, or listening for an approaching train. He was in charge of the automobile. The proof shows that he was an experienced driver, and that he had passed over this very crossing that morning before the collision occurred in the afternoon. He was necessarily familiar with the dangerous character of the crossing, and, in view of its highly dangerous character, it was incumbent upon him to exercise due care, as the driver of the automobile, for the safety of his guests riding with him.

One who invites another to ride in his automobile must exercise ordinary care not to increase the danger of such undertaking, or create a new danger, and will be liable to the person so invited for injuries caused by his failure thus to exercise ordinary care for his guest's safety. *Patnode* v. *Foote,* 153 App Div., 494, 138 N. Y. Supp., 221; *Beard* v. *Klusmeier,* 158 Ky., 153, 164 S. W., 319, 50 L. R. A. (N. S.), 1100. In that case the court said:

"We think the rule there stated [in *Patnode* v. *Foote, supra*] is the correct rule, and that appellant's duty to the appellee was to use ordinary care not to increase the danger of her riding with him, or to create any new danger. In the case at bar, appellant is charged with creating a new danger by his fast and reckless driving. As said in the *Foote Case, supra,* one who invites another to ride is not bound to furnish a safe vehicle or a safe horse or a safe automobile; but if the driver fails to use ordinary care in driving the automobile, he thereby creates a new danger for which he is liable. In requiring the appellant to exercise ordinary care in the operation of his car, and authorizing a recovery against him in case he ran his car at an unreasonable speed, thereby causing the injury, the trial court substantially followed the rule above indicated."

In *Fitzjarrell* v. *Boyd,* 123 Md., 497, 91 Atl., 547, it was contended that an invited guest could recover from the owner of an automobile only if the injury resulted from the gross or willful negligence of the owner. The court, however, refused to take this view and adopted the reasoning in *Patnode* v. *Foote,* and *Beard* v. *Klusmeier,* and held that the owner owed his invited guest the duty to use ordinary care not to increase the guest's danger or to create any new danger, and that a recovery might be had for an injury to the guest caused by an attempt, against the latter's protest, to pass another vehicle, by reason of which the car skidded and overturned.

In *Perkins Adm'x, etc.,* v. *Galloway,* 194 Ala., 265, 69 South, 875, L. R. A., 1916E, 1190, it was held that the owner of an automobile is liable for injury through the

operation of the car by him, to an invited guest, if he fails to exercise care reasonably commensurate with the nature and hazard attending such mode of travel, not unreasonably to expose the guest to danger and injury by increasing such hazard. In the case last cited the court said:

"This rule has been extended by many cases to one not a common carrier, who voluntarily undertakes to transport another, and makes such voluntary carrier responsible for injury to the person transported resulting from negligence, whether the service was for a compensation or was gratuitous"—citing *Harvey* v. *Deep River Logging Co.,* 49 Or., 583, 90 Pac., 501, 12 L. R. A. (N. S.), 131; *Wagner* v. *Missouri P. R. Co.,* 97 Mo., 512, 10 S. W., 486, 3 L. R. A., 156; 2 Shearm. & Redf. Neg. (4 Ed.), section 491; Beech, Contrib. Neg. (3 Ed.), section 165; *Wilton* v. *Middlesex R. Co.,* 107 Mass., 108, 9 Am. Rep., 11.

Huddy, Automobiles (2 Ed.), p. 117, section 18, declares: "One who voluntarily accepts an invitation to ride as a guest in an automobile does not relinquish his right of protection from personal injury caused by carelessness, and it should be understood by owners of motor vehicles that they assume quite a serious responsibility when they invite others to ride with them," etc.

In *Jacobs* v. *Jacobs,* 141 La., 272, 74 South., 992, L. R. A., 1917F, 253, it was held that, although an invited guest of the driver of an automobile, being a mere licensee, is not entitled to the consideration due by a carrier to a passenger for hire, he was nevertheless entitled to the benefit of

the provisions of the Civil Code that any act of negligence or imprudence that causes injury or loss to another obliges him who was at fault to pay for the injury or loss.

In *Turnpike Company* v. *Yates,* 108 Tenn., 428, 67 S. W. 69, it was held by this court that where a person, while riding in the carriage of another by invitation, is injured by the negligence of a third party, he may recover against the latter, notwithstanding the negligence of the owner of the carriage in driving his team may have contributed to the injury, where the injured person is without fault and had no authority over the driver.

To the same effect is the rule announced in *Knoxville Railway & Light Co.* v. *Vangilder,* 132 Tenn., 489, 178 S. W., 1117, L. R. A., 1916A, 11. In that case the court said:

"Of course, if an adult, who while riding in a vehicle driven by another sees, or ought by due diligence to see, a danger not obvious to the driver, or who sees that the driver is incompetent or careless, or is not taking proper precautions, it is his duty to give some warning of danger, and a failure to do so is negligence. Ordinarily, however, a driver is intrusted with caring for the safety of a carriage and its occupants, and unless the danger is obvious, or is known to the passenger, he may rely upon the assumption that the driver will exercise proper care and caution" citing *Shultz* v. *Old Colony St. R. Co.,* 193 Mass., 309, 79 N. E., 873, 8 L. R. A. (N. S.), 597, 118 Am. St. Rep. 502, 9 Ann. Cas., 402; *Colorado, etc., R. Co.* v. *Thomas,* 33

Colo., 517, 81 Pac., 801, 70 L. R. A., 681, 3 Ann. Cas., 700.

In that case the court further said: "We think this rule that the rider should exercise diligence when proper to do so would also devolve upon the wife riding with her husband. If the wife should see a danger not apparent to the husband, or observe that he was about to run into danger, it would be her duty to notify him, or else she would be chargeable with neglect of her own safety, which in some cases might bar her right of recovery for injuries received.

"But in the present case there was nothing that the wife could have done in the emergency presented which would have altered the situation, trusting as she was to her husband's guiding the car in safety, and we think that his negligence cannot be imputed to her under these circumstances."

In the case of *Hurt* v. *Y. & M. V. R. Co.,* 140 Tenn., 623, 205 S. W., 437, in commenting upon the rule announced in the *Vangilder Case, supra,* this court said:

"That was a case of husband and wife who met with an accident while the wife was riding with her husband in an automobile driven by him. The husband was negligent, and his right of recovery was held to be barred by his negligence, but the wife was allowed to recover because she was guilty of no negligence, and the negligence of the husband was not imputed to her. There may be a difference between the case of husband and wife, as in the one just cited, and the case of host and guest, as in the case under discussion; but the difference is slight and the

principle should be the same. The guest is under the same duty to look out for his own safety as he would be if traveling alone."

The court, however, held in that case that where the question of the guest's contributory negligence is debatable, or is one about which reasonable minds might differ, it is one to be determined by the jury.

The question of whether or not a passenger or a guest who is injured while riding in an automobile was in the exercise of due care is generally held to be one for the jury. *Clarke* v. *Connecticut Co.*, 83 Conn., 219, 76 Atl., 523; *Corley* v. *Railroad*, 90 Kan., 70, 133 Pac., 555, Ann. Cas., 1915B, 764; *Cladbourne* v. *Springfield St. R. Co.*, 199 Mass., 574, 85 N. E., 737; *Wilson* v. *Electric R. Co.*, 52 Wash., 522, 101 Pac., 50, 132 Am. St. Rep., 1044.

We are of the opinion that we would not be warranted in holding, as a matter of law, that Mrs. Vanhoy was guilty of negligence that proximately contributed to her death. She had never ridden in an automobile but a few times previous to the collision which resulted in her death, and was unfamiliar with the operation of automobiles. She was sitting on the rear seat of the automobile. There were two persons on the seat in front of her. There was another sitting on the right-hand front door. Mrs. Vanhoy being seated on the right-hand side of the rear seat, the people in front of her necessarily obstructed her view of the railroad track. It is not shown that she knew that the automobile was approaching the track of the railroad company; but, if she did know this, it does not

appear that she had any reason to think that the driver, who is shown to have been an experienced driver, would not exercise due care in driving the automobile upon the track, or that he would not take the necessary precautions to avoid danger and injury to those riding with him. He was in a much better position to see the track and observe the approach of the train than Mrs. Vanhoy. He owned and controlled the automobile. Mrs. Vanhoy had the right to rely, to some extent at least, on the driver looking out for her safety. It appears that she could not see the approach of the train until the automobile was within ten or fifteen feet of the track, while the driver could see it when the automobile was withing twenty or twenty-five feet of the track.

The charge is not made a part of the record, but we must presume that the trial judge gave a correct charge, and left the question of the contributory negligence of Mrs. Vanhoy to the jury, as well as the negligence of Mr. Hitshew, the driver, giving them proper instructions. The jury must have found that Mr. Hitshew was guilty of actionable negligence, and that Mrs. Vanhoy, was not guilty of any negligence. We think the jury's finding is conclusive upon this question.

As to the defendants' contention that the verdict of the jury is excessive:

We do not think this contention is well grounded. Mrs. Vanhoy was twenty-one years of age, and a woman in good health. She was plaintiff's housekeeper, and performed all the duties incident to housekeeping. She had

a long expectancy, and it cannot be said that the sum fixed by the jury is unreasonable under the rules established by this court for measuring the damages in cases of this character.

It results that we find no error in the judgment of the Court of Civil Appeals, and it is affirmed with costs.