DARRELL WHITLEY

*v.*

BUEL HIX and NELSON HIX, b/n/f BUEL HIX.

(*Nashville,* December Term, 1960.)

Opinion filed March 10, 1961.

C. R. JENT, LaFayette, SOLON FITZPATRICK, Carthage, for petitioner.

GUY E. YELTON, JAMES CHAMBERLAIN, LaFayette, for respondents.

Mr. Justice Tomlinson delivered the opinion of the Court.

The granting of this writ did not mean that this Court thought the Court of Appeals' opinion to be erroneous. But the case is unusual, for one thing. Another is that there seems to be conflict in published opinions of the question of (1) res ipsa loquitur, if that doctrine is applicable here, and (2) whether the operator of an automobile is liable only for gross neglience to a person riding as a licensee in the automobile; that is, whether such operator owes to a licensee only the duty of not willfully doing that which injures the licensee, or whether he owes him the duty not to commit acts of negligence which injure the licensee. This assumes that the rider in this case was a licensee, rather than an invitee, and that is another question in the case.

Finally, there are two code sections which may be pertinent in that it is insisted by petitioner for certiorari that one has superseded the other.

The jury upon the second trial of this case gave Nelson Hix, a minor, a verdict for $5,000 for damages for personal injuries received while riding either as an invitee or as a licensee, as the case may be, in the automobile driven by Whitley. Upon the first trial of the case as to which a wayside bill of exceptions, not now important, was saved, the Trial Judge seems to have first thought that young Hix was a licensee, and so indicated in his charge

to the jury, but upon further reflection he granted a new trial and there followed the second trial. The Court of Appeals' opinion had to deal with whether error was committed in the first trial before considering the second trial. Upon this petition for certiorari, we are relieved by reason of the assignments of error of any necessity of considering the proceedings in the first trial.

Young Buel Hix, a minor, met his friend Darrell Whitley, also a minor, the petitioner here, at a skating rink at Red Boiling Springs. Whitley was going with a girl who resided at Lafayette. At the skating rink, according to the testimony of young Hix, Whitley asked Hix if Hix wanted to go to Lafayette with him that night to see this girl. He did want to, and went along.

They first went to the home of this girl, Judy Donoho, now Judy Donoho Gann. The two boys first called at her home and learned that she was at the theater. They then drove to this theater, and young Hix went in and looked for her and there saw Judy's sister who finally found Judy. Judy came out and got in the rear seat of the car while young Hix returned to the front seat with Whitley. This not customary procedure is explained by the fact that Whitley and this girl Judy were in the midst of a "spat" at that time. On the way back to Red Boiling Springs the car was stopped and Judy was asked if she wanted to go back. Young Hix said that she gave a negative reply. Her testimony is that she made no reply. It is unimportant. At any rate, they drove on and then the accident happened. Young Hix was unconscious three or four days, and does not remember anything about the wreck. The last he remembers is when they were about a quarter or half mile from the point where the accident occurred.

Now according to the testimony of young Whitley, who was called by the plaintiff as a witness, he did not invite young Hix to go with him from the skating rink to Lafayette. His testimony on that point is as follows:

"Q. Did you ask this boy to come over with you to Lafayette? A. No, sir.

"Q. He just got in the car and came over without being invited? A. That's right.

"Q. You didn't have any business for him to come over here with you? A. Not as I can see.

"Q. You were coming over here on a date? A. That's right.

"Q. I believe you and your girl friend at that time was kinda fussing? A. That's right."

And then further as follows:

"Q. You had no objections to him riding in the car? A. If I had I'd probably have asked him to get out. I didn't tell him to get out, but I didn't want him to come along. I never got anybody to get out of a car in my life."

\*   \*   \*   \*   \*   \*

"Judge: How come him to come with you? A. He asked me had I been to Lafayette, and I said 'No, but I'm thinking about going to pick up my girl.'

"Judge: How come him to get in the car? A. He got in of his own accord.

"Judge: Did you tell him not to get in? A. No, sir.

"Judge: Did you tell him to get out? A. No, sir.

"Judge: What did you do when you got to Lafayette? A. Went and picked up my girl.

"Judge: Did you get her? A. He went in and got her at the movie.

"Judge: Did she come out in response to his going in? A. Yes, sir.

"Judge: And got in the car with you? A. Yes, sir.

"Judge: And that's the girl that you and her were sort of spatting? A. Yes, sir."

At the close of the evidence, Judge Mitchell granted the motion of the plaintiff Hix for a directed verdict as to liability. In doing so he said this:

"Judge: I think the testimony of the defendant, Darrell Whitley, to the effect that he permitted the Plaintiff, Nelson Hix, to ride in the automobile with him, and Darrell Whitley's testimony that he himself was in charge of the automobile, also the operator of it and the driver of it, and that he didn't make any effort to prevent Nelson Hix from riding with him to Lafayette, I think the natural inference is that he used Nelson Hix to some extent in trying to patch up the difference between himself and his sweetheart. Because after they got to Lafayette, he sent Hix into the theater looking for this young lady whom he wanted to patch up things with, and he brought her out and they got in the car, and then Darrell Whitley testifies unequivocally that he was in charge of the automobile and was driving along the road and lost control of it. I think if a man loses control of his automobile and it goes into a wreck that he is guilty of negligence and might be guilty of gross negligence."

The Court of Appeals construed the effect of this testimony as follows:

"From all of the foregoing the trial judge was of the opinion, and so stated, that Nelson Hix was not a trespasser, nor a mere licensee, and we agree with him. In our opinion, at the time of the accident, the plaintiff was an implied invitee and a guest, and that this is the only possible interpretation which could be placed upon the evidence."

The question arising under the above quoted testimony is whether the only permissible inference from the testimony is that young Hix was an invitee. If not, a jury question was made because young Hix did testify that he was invited expressly and young Whitley says that he wasn't. The petitioner insists that the law requires a holding to the effect that Hix was a licensee rather than an invitee. He relies upon the Court of Appeals' case of *Smith v. Burks,* 1957, 43 Tenn.App. 32, (with certiorari denied), 305 S.W.2d 748, 749, 750, 752.

In *Smith v. Burks* the truck of the defendant was delivering some mixed concrete to the plaintiff. There being no road upon the premises the truck mired in the soft ground. After putting rock in the soft place so the truck could get out, the plaintiff voluntarily got on the running board of the truck. This, he says, was in order to direct the driver where to go. In the course of the travel the truck stopped with the backend just off of the pavement and slipped back a little bit, then all of a sudden "the front end reared up and threw him off, resulting in his injuries". Plaintiff said that the driver had not "said anything to him about getting on the truck". The Court of Appeals observed that the first question is

"whether plaintiff was an invitee or mere volunteer, or licensee".

That Court first notes that the plaintiff could have been of more assistance by staying on the ground than riding on the running board; that on the running board he was an obstruction to the driver's view, and more of a hindrance than a help, and that a running board is not a suitable place for a passenger to ride, and being there is fraught with some danger.

The Court cited cases which held that "when one goes on the premises of another for any of the purposes stated in the rule, he must confine himself to such premises as are included in the invitation" and does not include places to which the public is not invited. Proceeding from that premises, the Court says:

"We are persuaded to believe that the facts and circumstances shown herein do not warrant the conclusion that there was an implied invitation to plaintiff to ride the running board of the truck."

This case is unlike the case at bar in two respects: First, young Hix was not on the running board. He was in that part of the automobile where he would be expected to be, to wit, on the seat. Second, the rule with reference to liability to a licensee upon premises is not in point as to a plaintiff in an automobile when it comes to determining whether the defendant is liable in case of ordinary negligence or merely gross negligence to a licensee.

In *Sandlin v. Komisar,* 19 Tenn.App. 625, 628, 93 S.W. 2d 645, 647, the rule is stated:

"The prevailing and the sounder rule, adopted by the great weight of authority, is that the operator of an

automobile owes the duty of ordinary or reasonable care to a guest—whether he be an invitee or a licensee (*Tennessee Cent. R. Co. v. Vanhoy,* 143 Tenn. 312, 226 S.W. 225; *Schwartz v. Johnson,* 152 Tenn. 586, 280 S.W. 32, 47 A.L.R. 323), a degree of care and diligence which a man of reasonable prudence would exercise for his own protection and the protection of his family and property under like conditions.'' (Citing cases.)

Judge Humphreys' comment in the instant case on this question, after referring to *Sandlin v. Komisar,* is this:

''In our society, in which the automobile has become one of the most necessary and most commonly utilized articles both of commerce and of pleasure, affecting directly the lives of literally hundreds of thousands of people, this court cannot be expected to recede from the rule announced in *Sandlin v. Komisar,* supra, nearly twenty-five years ago. If the law cannot grow more humane, and in the interest of certainty it should only grow by legislation, certainly it should not regress in this regard to the extent of permitting a driver to carelessly or negligently snuff out the life or maim forever a person riding with him as a guest in an automobile and escape liability therefor because he did not extend that person an invitation to get in the automobile with him.''

The next question is whether under the principle of res ipsa loquitur it is always a jury question as to the negligence of the driver, or can there be a case in which it ceases to be a jury question, thus requiring a directed verdict for plaintiff.

Upon the evidence as to res ipsa loquitur, young Hix, as before noted, has no recollection of what occurred

beyond a point from a quarter to a half mile from the scene of the accident. So, he doesn't know just how it occurred. His testimony is that up to the point where his memory stopped the defendant had not been driving recklessly. This young lady, Judy Donoho Gann, also a witness for the plaintiff, did not know how it occurred because she was on the back seat with her head lying on the back of the seat, and not watching his driving. She does say that "if he was driving reckless at all, I think, I would have seen it". That statement is not evidence as to whether he was, or not, driving negligently.

As heretofore stated, Whitley, the defendant driver, was called to the witness stand by the plaintiff. He testified that he drove the car along the road to the place where there is a curve and "that curve turns to the right", but that instead of making the curve "I went straight". Then there is had the following question and answer:

"Q. State in your own words what happened on the curve? A. I just lost control of the car. That's all."

His testimony is that he was driving all along the way that night between forty-five and fifty miles per hour.

Judge Mitchell thought that this establishes negligence as a matter of law. He said this: "I think if a man loses control of his automobile and it goes into a wreck that he is guilty of negligence and might be guilty of gross negligence".

The petitioner insists that this evidence makes a jury question as to whether Whitley was guilty of a negligent operation of the car; hence, that the Judge deprived him of his constitutional right in deciding that question. He relies upon Judge Felts' opinion in *Sullivan v. Crabtree,*

36 Tenn.App. 469, 258 S.W.2d 782, 785. In that case the defendant driver, proceeding down the mountain from Monteagle to Pelham, was overtaken and passed by another truck, and just after it did so Crabtree's truck swirled to its left, ran off the road and overturned down a steep embankment. Sullivan was killed. Defendant testified that there was some loose gravel on the ground at that point and that the pavement was broken off a little on the right hand side, that when he hit the edge of the curve "he lost control of the truck" and it turned and went off of the highway. He says that the brakes could have given away.

The jury returned a verdict for the defendant. On appeal it was insisted that under the rule of res ipsa loquitur, the Trial Judge should have held that the only inference to be gathered from the evidence is that the defendant driver was guilty of negligence. Judge Felts, responding to that, said this:

> "While we agree that these facts made a case of res ipsa loquitur, we do not agree that they, though unexplained, required an inference or finding of negligence, or that the jury could not reasonably refuse to find negligence and return a verdict for defendant, or that there was no evidence to support their verdict for him."

He did go on and say, however, "in exceptional cases the inference may be so strong as to require a directed verdict for plaintiff, as in cases of objects falling from defendant's premises on persons in the highway * * *." But that in the ordinary case res ipsa loquitur merely permits the jury to choose the inference of defendant's negligence "in preference to other permissible or reasonable inferences".

In *Sullivan v. Crabtree,* there were other factors which might be inferred as the cause of the truck being wrested from the control of the driver and leaving the highway. There was the unexpected loose gravel upon which the truck suddenly came as it entered the curve and there was the broken surface on one side of the traveled portion of the highway. None of those things appear in the instant case. No effort is made to suggest any reason why "I just lost control of the car. That's all."

■ The Court of Appeals thought that the evidence, therefore, required the finding of negligence upon the part of the driver. This Court agrees. *Casenburg v. Lewis,* 163 Tenn. 163, 166-167, 40 S.W.2d 1038, 1039 states the rule thus:

"Applying the rule, it is said the fact of injury makes out a prima-facie case of negligence and in the absence of countervailing explanatory proof to overcome the prima-facie case liability would follow. It is said that the inference of negligence arises under the doctrine of res ipsa loquitur and the prima-facie case thereby established becomes conclusive unless rebutted by opposing evidence."

Buel Hix, the father, brought a separate suit for medical expenses, hospital bill and loss of services of his son. This son resided in the home of Buel Hix and his mother. It is the contention of petitioner that Buel Hix cannot alone maintain this suit because the mother, so petitioner says, is entitled equally with the father to recover for the services of their boy and is equally liable for the medical and hospital expenses. Some of these expenses have been paid by the father and the others are charged to him. The petitioner bases this insistence upon Section 34-101,

T.C.A. wherein both parents are declared natural guardians of, charged with the care, etc. of the estates of their children, and are equally entitled to "the control and the services and earnings of such minor child or children".

The suit was brought under Section 20-105, T.C.A. providing that a father, or in case of his death or desertion, the mother "may maintain an action for the expenses and the actual loss of services resulting from an injury to the minor child in the parents' services or living in the family". Petitioner claimed that section 34-101, T.C.A. has superseded section 20-105 hence, that the suit must be maintained by both parents if at all.

■ Section 34-101, T.C.A. is in the chapter dealing with "Guardianships". Section 20-105, T.C.A. is in the chapter dealing with "Parties to Actions". This Court perceives no reason why the father may not maintain the suit under that statutory authority. The medical expenses incurred by reason of the injury of young Hix have been paid by, or are charged to the father. Such also was the conclusion of the Court of Appeals.

The judgment of the Court of Appeals is affirmed.