## R. W. WILKINS v. F. R. MALONE.

Western Section.   July 23, 1931.

Petition for Certiorari denied by Supreme Court, January 23, 1932.

W. R. Landrum, of Trenton, for plaintiff in error.

Lloyd S. Adams and J. D. Senter, Jr., of Humboldt, for defendant in error.

OWEN, J. R. W. Wilkins, the defendant below and hereinafter called defendant, has appealed from a judgment in the sum of $7,-500 rendered in January, 1931, in the lower court, at Humboldt, Gibson County, in favor of F. R. Malone hereinafter called plaintiff.

Malone was injured in January, 1930, while riding in defendant's automobile. The defendant was driving an automobile on the Humboldt and Medina highway, in route to Huntingdon, Tennessee. The accident occurred about two and one-half miles east of Humboldt. There were four men in the automobile at the time of the accident. It was defendant's car, and he was driving or operating the car. The plaintiff was on the front seat by the side of defendant. A Mr. Delaney and Mr. Scott were on the rear seat.

There were two counts to the declaration. In the first count, it was alleged that the defendant negligently and carelessly withdrew his attention from the road ahead, and the proper operation of said automobile; that he had placed his hand in his inside coat pocket,

and was looking in his inside coat pocket for a letter or paper, in utter disregard of his duty as driver, and safety of the occupants.

It was alleged that one of the occupants on the back seat observed a deep rut washed out in the road ahead, at the end of a bridge and at the foot of a hill, which they were descending. It was alleged that the car was being driven at a speed between thirty and forty miles per hour, and defendant received this warning when he was 250 feet from the washout or obstruction, and he could have stopped his automobile after receiving the warning, had he been driving the car with due care and attention; that he did not have the automobile under proper control. The declaration alleged that the defendant failed to stop his automobile, that he struck the deep rut or washout in the road at such a rapid rate of speed and with such an impact that plaintiff was thrown upward with great force, his head striking the top of the car with violence, plaintiff was knocked unconscious, and received severe injuries, that he suffered great pain and mental anguish, that he was permanently injured and had spent approximately $700 for doctors' bills and medicines.

The second count alleged the same negligence as the first count, and that the negligence on the part of the defendant was without plaintiff's knowledge, that the defendant withdrew his attention from the road, took his hand off of the wheel, began looking in his inside coat pocket for some papers in disregard of his duty as driver and for the safety of the other occupants of the automobile, and that the defendant was driving the said automobile in violation of Section 2, Chapter 87 of the Public Acts of Tennessee, for the year 1925.

The defendant filed three pleas:

(1) was the general issue;

(2) contributory negligence;

(3) that the plaintiff and defendant were journeying together on a joint enterprise.

It appears that this cause was tried in August, 1930, resulting in a mistrial. Again tried in January, 1931, numerous witnesses were examined with the result as heretofore stated, a judgment being rendered in favor of plaintiff, the defendant seasonably filed his motion for a new trial, which was overruled, perfected an appeal and had signed a proper bill of exceptions, and has assigned fourteen errors; these errors will be treated in five groups:

Group No. 1 includes assignments one and two: by these assignments it is insisted that there is no material evidence to sustain the verdict, and that plaintiff's own contributory negligence, as a matter of law, should bar any recovery.

The third assignment insists that the verdict is excessive.

Group No. 2 includes assignments ten, eleven and twelve, which assignments complain of the Court's ruling on certain excluded evidence.

Group No. 3 embraces assignments seven, eight, nine, thirteen and fourteen, which complain of certain errors in the Court's charge to the jury.

Group No. 4 includes assignments four, five and six, and complain of the Court's declining to charge certain special requests offered by the defendant.

Group No. 5 is the third assignment.

It appears that both plaintiff and defendant, each, offered a number of special requests, and all the special requests were declined by the trial judge.

The facts briefly stated surrounding the accident, and material to state are as follows:

The defendant was the owner of an automobile, which he was driving from Humboldt to Huntingdon. The plaintiff was a guest of the defendant on this journey, and was seated on the same seat with the defendant. On the rear seat was a Mr. Delaney and a Mr. Scott. It appears that Mr. Scott testified in the first trial, but he had moved out of the community and could not be located for the second trial.

The plaintiff does not possess much knowledge as to the operation of an automobile; the defendant was an experienced driver. He was driving, at the time of the accident. Just after the car started down a hill, Delaney, from the back seat, holloed to the defendant to look out for a hole at the foot of the hill where there was a small bridge. The car was going at a rate of thirty-five miles or more per hour. The defendant only had one hand on the steering wheel when Delaney made this exclamation. The defendant was feeling in his pocket for a letter at the time of Delaney's exclamation. It appears that the hole was a sunken place in the road. It appears that the defendant, after the exclamation from Delaney, became excited and did not lessen the speed of his car. It appears that it was 110 yards from the brow of the hill to the sunken place or hole at the end of the bridge. The car was from 75 to 85 yards from bridge when defendant's attention was called to the hole. The car struck the hole with the full force of thirty-five miles per hour, defendant says that he was driving forty miles an hour. There is proof that the defendant's car could have been stopped when going thirty-five miles an hour in a distance of 75 feet.

We find evidence supporting the allegations that the defendant did not have his car under proper control, that he was negligently operating the car, looking in his pocket and operating the steering wheel with one hand, that he was warned in plenty of time to bring his car under control and avoid striking the hole.

On the question of contributory negligence we find that the plaintiff had a right to rely upon the defendant. The defendant had

been warned of the danger in plenty of time to avoid striking the obstruction, and the plaintiff states that as soon as he realized that the car was going to strike or run into the hole, the only thing he could do was to press his feet against the windshield and take the consequences. It would not be expected that the plaintiff would jump out of the car, and the plaintiff not knowing anything about the operation of the car, he relied upon the defendant to bring the car under control.

It appears that this sunken place extended across the road and was about 3 feet wide from one foot to one and one-half feet deep. The defendant's attention having been called to the danger, we find that there is evidence to sustain negligence on the part of the defendant in not having his car under control and in not stopping his car and avoiding the accident. Defendant testified that he applied his brakes as soon as he received the notice of the hole in the road. He is contradicted on this statement; no one heard the brakes screak, and the car did not slacken its speed after the defendant was warned.

"A person of ordinary prudence riding with another, upon his invitation, will naturally put a certain trust in his judgment, and will rely in some measure on the assumption that he will use care to avoid the ordinary dangers of the road." (Berry on Automobiles, 3 Ed., Sec. 522.)

"Anyone riding with a driver has the right to some extent to rely upon him to exercise care for the safety of all in the vehicle. By this such person does not make the driver his servant, nor is he on that account to be held for the driver's negligence. It is a matter of every day occurrence in every part of the country for persons of ordinary prudence to rely greatly upon the person in control of the vehicle. It would be strange, indeed, to require every person in a vehicle to keep the same lookout that the driver naturally keeps and is required to keep. What all men do may certainly be taken as the standard for ordinary prudence. Of course, if the passenger or guest knows or has notice that the driver is careless or reckless, he may be negligent in entrusting himself in the vehicle with him; but that raises a question of his own negligence, and has no bearing on the question of imputed negligence." (Berry on Automobiles, 3 Ed., p. 485, Sec. 502.)

"Our Courts have held repeatedly that the guest in an automobile has the right to rely that the driver will use care to avoid the ordinary dangers of the road, and the guest, also, has the right to rely upon the assumption that the driver can control his car within a reasonable distance when the driver's attention is called to an obstruction." Knoxville Railway & Light Co. v. Vangilder, 132 Tenn., 489, 178 S. W., 1117; T. C. Railway Co. v. VanHoy, 143 Tenn., 312 226 S. W., 225.

It results that the first two assignments of error are overruled. The second group of assignments complained of the Court in excluding the testimony of G. W. Clement and E. W. Clement to testify that they passed along this same place where the plaintiff was injured, and that they did not see the obstruction in time to stop their car, and defendant sought to prove the same by other witnesses, which assignments are classified under group two. To have permitted this testimony would have broadened the issue as to whether or not the defendant was negligent and come into collateral matters and tried the negligent or proper caution exhibited by each of these witnesses. If some of these witnesses or all of them ran an automobile into this hole, or sunken place, there is nothing to show that the driver of the automobile had been warned in plenty of time to avoid striking the hole. It is insisted in this case that the defendant had been warned in plenty of time to avoid running his car into the sunken place in the road, should he have used ordinary care and had his car or automobile under control.

The principal act of negligence against the defendant is that he didn't have his car under control and avoided the accident after being warned. As to why anyone else ran an automobile into the sunken place the same day would be another issue, and whether an automobile ran into the place or avoided running into it would not excuse the defendant.

We are of the opinion that the Court was not in error in excluding this line of evidence. It results that the assignments ten, eleven and twelve are overruled.

As to the third group, which embraces the assignment complaining of excerpts from the Court's charge, and being five assignments, seven, eight, nine, thirteen and fourteen. It appears that assignments eight and fourteen are the same, so we have four excerpts from the Court's charge, wherein it is insisted that error was committed and that the defendant was prejudiced thereby.

The excerpt as shown by the seventh assignment insists that the Court was too rigid and exacting of the driver. The Court instructed the jury that it was the duty of the defendant to always be on the lookout ahead for obstructions and dangers. It is insisted that the word "always" is too harsh and requires a greater degree of diligence than watchfulness, prudence and carefulness. If the Court had left out the word "always," it would have sounded a little more soothing to the defendant, but the defendant was not prejudiced, in our opinion, by the use of the word "always" on the lookout.

Mr. Berry, in his work on Automobiles, 3 Ed., p. 154, lays down the following rule, governing drivers of automobiles:

"On account of the ease with which injury can result from the slightest negligence or inattention in the operation of a machine,

ordinary diligence requires that the driver of an automobile be constantly on the lookout, and that he have his machine in such condition as that it shall be under his perfect control.''

The seventh assignment is overruled.

The eighth assignment complains of the Court's instruction as to ''proper lookout ahead.'' The Court had instructed the jury the duties of the driver and it was not necessary to go into a further discussion and statement as to what was meant by ''proper lookout ahead.'' The eighth assignment is overruled.

The ninth assignment complains of the Court's instruction to the jury as follows:

''Plaintiff's measure of damages, subject to the above stated rule of mitigation, is for reasonable compensation for the injuries sustained, his mental and physical pain and suffering, loss of time occasioned by such injuries, expenses incident to hospital and medical bills, if you find that the injury is permanent for the disabilities occasioned thereby.''

It is insisted that this charge was equivalent to instructing the jury that the plaintiff was entitled to some damages, that the Court should have preceded this instruction by a statement, ''if the plaintiff is entitled to recover or if you find for the plaintiff.'' The Court had properly told the jury that before they could find for the plaintiff, the plaintiff would have to establish by a preponderance of evidence the material allegations, stated in his declaration.

We presume that the jurors, who tried this case, were men of ordinary intelligence, and they were not misled by this portion of the charge, and they had to find, first before considering the measure of damages, that the plaintiff was entitled to a verdict for some damages. The ninth assignment is overruled.

By the thirteenth assignment, it is insisted in a general way that the charge of the Court required of the defendant a higher degree of vigilance and a higher degree of care and course of conduct than the law imposed on him and was, therefore, prejudicial. We do not agree with counsel as to this statement of the charge. We do not think that the defendant was prejudiced by the charge of the Court, or by refusing the special requests offered by the defendant, and there being, in our opinion, no prejudicial error in the Court's charge, Chapter 32 of the Acts of 1911 applies in this case, and it results that all of the assignments in groups two and three are overruled and disallowed.

As to assignment number three, that the verdict is excessive, the record shows as follows, that the plaintiff was engaged in the practise of law at Humboldt, Tennessee, at the time he was injured, and had been in the practice for several years. He had an earning capacity of from $3500 to $4200 per year.

At the time of the trial of the instant case, the plaintiff had been injured for practically a year, and during that time he had been able to be at his office but very little, and had earned $120 in his law practice during the year following his injuries.

The plaintiff had expended for doctors' bills, hospital bills about $700, so he has proven at least $4500 of actual damages. His earnings had practically been reduced to nothing, and it appears that he had a good law practice both in 1928 and 1929.

At the time of the injury, the plaintiff was knocked unconscious, his head struck a beam across the top of the automobile, his leg was lacerated, his back was bruised, and he received serious injuries to his spinal column or backbone. He was treated at his home by Dr. Williams of Humboldt, who arrived at the place of the accident in a few minutes after it occurred. About two weeks after the accident plaintiff was removed to a hospital in Memphis, where he was confined for several weeks, and where it appears he suffered with great pain.

The record shows that shortly after the accident, the plaintiff had severe nerve explosions, or nervous prostration; these spells occur once a week. Dr. Williams testified that they are similar to shell shock. This condition has a very depressing effect upon the plaintiff. Doctors have recommended that he take light exercise, to stay out in the open. He has tried to hunt birds and tried to fish, but readily becomes too exhausted to enjoy either sport. When he has these spells he drops out like a person seized with epilepsy, has to receive medical attention, be carried to his home, and has to remain in bed a day or two after each one of these spells. Plaintiff weighed 227 pounds at the time of the accident. At the time of the trial he weighed 170 pounds. His condition has necessitated his physicians to perform several lumbar punctures in his back; these punctures are made with a needle into the plaintiff's spine, and the needle withdraws a fluid or liquid that forms in the marrow of the backbone. These punctures are very painful. Four doctors testified for the plaintiff. They all testified that his injuries were serious, that he had suffered much physical pain and mental anguish. The doctors cannot say whether the plaintiff's injuries are permanent or not.

Dr. Williams, who has practised medicine in Humboldt for twenty-eight years, and who was the first physician to reach the plaintiff after he was injured, testified that the plaintiff suffered a concussion of the spine, which caused the spells or nerve explosions to which the plaintiff is subject; that during the four months preceding the trial, the plaintiff had had twenty or twenty-five of these spells, in which the witness, Dr. Williams, rendered treatment, that the only cure the witness knew was for the plaintiff to go to a Sanatorium

and have his spine placed in a plaster cast and kept there for about six months or a year, and that this was not a sure cure.

The record shows that the plaintiff, at times, is seized by one of these paroxysms and Dr. Williams cannot be reached and other doctors are called in. It appears that he has been treated by Dr. G. W. Penn, Dr. T. O. Lashlee, an Osteopath, and Dr. J. W. Ousler. All these doctors agree that these paroxysms are accompanied by terrible pains, that the plaintiff borders on nervous prostration, and that his condition has not improved satisfactorily.

It is insisted that the plaintiff aggravated his own injuries by making a trip the day following the accident from Humboldt to Huntingdon, by automobile, returning the same day. It appears that the plaintiff was in a hazy condition the next day after the accident. Dr. Williams, the attending physician, would not have consented for the plaintiff to make this trip, but he made it.

The record shows that the Huntingdon trip was on his mind. After he regained consciousness following the accident, plaintiff was insistent to go ahead to Huntingdon, and Dr. Williams gave him opiates, the effect of which was to quiet him and get him to his home. The proof in the case shows that the trip to Huntingdon the next day did not aggravate plaintiff's injuries, neither did it help his condition.

There is no fixed rule whereby damages for pain, suffering and mental anguish can be reached by a mathematical calculation. On the measure of damages the jury received the proper instructions from the trial Judge. The jury saw the plaintiff, his physical condition.

It appears that he was thirty-three years of age at the time of the trial, and had been in good health prior to his injuries.

The trial Judge has approved this verdict, and we are sure that he gave the verdict due and proper consideration when he passed on the motion for a new trial, and especially the grounds for a new trial wherein it was claimed that the verdict was excessive and so excessive as to show prejudice and caprice on the part of the jury.

"The amount of the verdict is primarily for the jury to determine, and next to the jury the most competent person, to pass upon the matter is the judge who presided at the trial and heard the evidence." Reeves v. Catignani, 157 Tenn., 173, 7 S. W. (2d), 38.

In the Catignani case our Supreme Court speaking through Mr. Charles C. Trabue, Special Judge, said, "The right to revise even the amount of the verdict by the process of suggesting a remittitur is a delicate one, and one that a Court should be slow to adopt." We are of the opinion that the verdict in the instant case is not excessive, and it is not a verdict that resulted from prejudice, passion or caprice on the part of the jury. All of the assignments are overruled and

disallowed. The judgment of the lower Court is affirmed. The plaintiff will recover of the defendant the amount of judgment rendered in the Court below, with interest thereon from the date of its rendition, and all the costs of the cause for which execution will issue. Execution will issue against the defendant and his surety on appeal bond for the costs of the appeal.

By consent of parties Judge V. H. Holmes sat in the hearing and disposition of this case, in the room and stead of Judge Senter, who recused himself.

Heiskell, J., and Holmes Sp. J., concur.