# M. M. CULLOM v. R. J. GLASGOW.

Middle Section. December 4, 1926.

No petition for Certiorari was filed.

1. **Negligence. The driver of an automobile suddenly confronted with an emergency is not required to make the wisest choice, in acting to avoid a collision.**

Where an automobile driver who by negligence of another, and not by his own negligence, is suddenly confronted by an emergency and is compelled to act instantly to avoid a collision or injury, he is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a condition might make, even though he did not make the wisest choice.

2. **Negligence. Driver of an automobile can not invoke emergency rule where his own negligence placed him in the emergency.**

The driver of an automobile can not successfully invoke the emergency rule just stated where his own negligence led him into the emergency.

3. **Trial. Instructions. Instruction giving an abstract statement of law held properly refused in the instant case.**

An instruction telling the jury that one who acts in emergency using ordinary care, is not guilty of negligence even though he did not make the wisest choice although a correct statement of law, **held** properly refused, under the facts of the instant case because it did not advise the jury that this rule did not apply where the emergency was created by the driver's own negligence.

4. **Automobiles. Negligence. The driver of an automobile is bound to exercise ordinary care.**

The driver of an automobile is bound to exercise ordinary care or that degree of care and caution which an ordinarily careful and prudent person would exercise under the same circumstances, and what would be considered ordinary care may vary according to the place and circumstances at the time.

5. **Negligence. Evidence held sufficient to take the question of defendant's negligence to the jury.**

In an action to recover damages sustained by being struck by an automobile where the evidence showed that a car appeared suddenly in front of defendant's car and that there was a street car on the track to the left, and to avoid collision with the automobile or the street car, the driver ran over the sidewalk where plaintiff was struck and there was further evidence that the defendant's car was coming at a high rate of speed, **held** there was sufficient evidence of negligence on the part of defendant before the emergency arose to require the question to be submitted to the jury.

6. **Damages. $2000 for personal injuries sustained by being struck by an automobile held not excessive.**

Where the evidence showed that plaintiff was a carpenter earning about $135 per month, and he was seriously injured, decreasing his ability to earn money to a large extent, **held** a $2000 verdict not excessive.

Appeal in Error from Circuit Court of Davidson County; Hon. A. G. Rutherford, Judge.

Affirmed.

C. Wade Wilkes, of Nashville, for plaintiff in error.

Atkinson & Atkinson, of Nashville, for defendant in error.

FAW, P. J. R. J. Glasgow brought this suit in the circuit court of Davidson county, on August 22, 1924, against Dr. M. M. Cullom, Nashville Industrial Corporation, Stockell Motor Car Company and W. F. Stockell, to recover damages for injuries to his person. At the close of plaintiff's proof on the trial in the circuit court, the trial judge peremptorily directed the jury to return a verdict in favor of Nashville Industrial Corporation, Stockell Motor Car Company and W. F. Stockell, which was done, and this ruling of the trial judge is not challenged in this court. We may therefore treat the case as if brought against Dr. Cullom alone.

Dr. Cullom is the plaintiff in error in this court, but, for convenience, we will designate the parties according to their attitude in the circuit court, that is, R. J. Glasgow as plaintiff and Dr. Cullom as defendant.

After overruling a motion for peremptory instructions on behalf of defendant, made at the close of all the evidence, the trial judge submitted the case to the jury upon the issues made by the defendant's plea of not guilty to plaintiff's declaration, and the jury found the issues in favor of the plaintiff and assessed his damages at $2000; whereupon judgment was rendered in favor of plaintiff and against defendant for the sum of $2000 and all the costs of the cause, for all of which execution was awarded.

The defendant's motion for a new trial was overruled, and he brought the case to this court by an appeal in the nature of a writ of error and has assigned errors here.

Through his first assignment the defendant complains of the action of the trial court in overruling his motion for peremptory instructions made at the close of all the evidence; and through his second assignment he asserts that there was no material evidence to support the verdict of the jury.

If there was sufficient evidence to carry the case to the jury there was some material evidence to support the verdict, and we may therefore consider the first and second assignments of error together. 139 Tenn., 37, 44, 201 S. W., 131, 142 Tenn., 678, 688, 222 S. W., 1053.

The proof shows, without dispute, that about ten o'clock in the morning of July 21, 1924, an automobile owned by defendant and driven by his son, Hale Cullom, about twenty-one years of age, and in which automobile defendant was riding at the time, struck and injured the plaintiff Glasgow. In this court the defendant concedes that if, upon the record, the driver of his automobile was guilty of

negligence which was a proximate cause of plaintiff's injuries, that he (defendant) is liable therefor under the doctrine of respondeat superior; but it is claimed for defendant that, under the conditions and circumstances surrounding the parties at the time plaintiff was injured, the driver of defendant's automobile was not guilty of actionable negligence.

Although defendant concedes that his automobile was driven against the body of the plaintiff, and that, as a result of the impact, plaintiff suffered personal injuries, defendant insists (through his third assignment of error) that if it should be held, upon the facts of the case and the law applicable thereto, that defendant is liable in damages to plaintiff for the injuries thus suffered, the verdict rendered by the jury was excessive in amount, and so excessive as to indicate prejudice, passion and caprice on the part of the jury.

It is not claimed on behalf of defendant, as we understand the briefs, that plaintiff was guilty of contributory negligence. However, the trial judge gave the jury instructions upon that subject, to which instructions there are no exceptions, and it is quite clear that there is no room on the record for a holding that, as a matter of law, plaintiff was guilty of negligence which contributed to his injuries. We may therefore assume, for the purposes of this opinion, that plaintiff was exercising ordinary care for his own safety at the time he was injured.

In view of the narrowness of the issues before this court, as indicated by the foregoing preliminary statement, an extended review of the facts disclosed by the evidence is not necessary to a disposition of the assignments of error.

Plaintiff, a man about fifty-six years of age, was near the outer curb of the sidewalk in front of the place of business of the Stockell Motor Car Company, situated on the south side of Broadway near the corner of Fifteenth Avenue, south, in the city of Nashville, when he was struck by defendant's automobile. Plaintiff was waiting to board an east-bound street car and, on seeing a street car approaching from the west and a little less than one block distant, he stepped off the curb immediately east of a driveway used by automobiles for the purpose of making their exit from the garage of the Stockell Motor Car Company, but at that moment an automobile was driven out of the garage by an employee of the Stockell Motor Car Company, across the sidewalk and into Broadway, where it stopped with its nose pointing northward (across Broadway).

The automobile thus driven out of the garage was a Buick and the automobile of defendant which struck plaintiff was a Lincoln, and, for the sake of brevity, we may hereinafter refer to them as the Buick and Lincoln, respectively.

East-bound street cars were accustomed to stop for passengers in front of the Stockell Motor Car Company's garage, and when the Buick car stopped alongside and immediately west of plaintiff he stepped back onto the sidewalk and walked across the driveway leading out of the garage, intending to leave the sidewalk on the west side of the driveway, pass the west side of the Buick and board the street car, but while on the sidewalk, and immediately west of the driveway, he was struck and knocked down by defendant's Lincoln car. The front wheels and the right hind wheel of the Lincoln mounted the curb, which placed the Lincoln entirely across the sidewalk, but the left rear wheel of the Lincoln remained in the gutter against the curb.

The Lincoln car was moving eastward along the south side of Broadway, between the curb and the street car track, when the driver, Hale Cullom, saw the Buick car driven out into Broadway in front of the Stockell Motor Car Company's garage as before stated.

The distance between the curb and the south rail of the street car tracks (there being a double track at that point) was twenty-four feet. The width of the open passageway for automobiles between the curb and the street car track was reduced by the presence of some parked automobiles along the curb on the south side of Broadway west of the point where plaintiff was intending to leave the sidewalk as aforestated.

The theory of the defendant, supported by his testimony and that of his son who was driving the Lincoln, and also in some particulars by other witnesses, is that the Lincoln had been stopped behind a standing street car at Sixteenth Avenue, and had just passed the street car moving in the same direction when the driver, and also the defendant, saw the Buick "dart" out into Broadway and stop within one or two feet of the south rail of the street car track; that the Lincoln was at that time moving at a speed of fifteen or twenty miles an hour; that when the Buick thus appeared across the path of the Lincoln there was not sufficient time and space in which to stop the Lincoln before it would collide with the Buick; that it was dangerous to the safety and lives of those in the Lincoln for the Lincoln to be turned to the left so as to go around in front of the Buick, as this would place the Lincoln upon the track in front of the street car which was near the rear of the Lincoln and moving in a parallel course; that there appeared to the driver to be a reasonable chance of running the Lincoln into the Stockell Motor Car Company's garage through the same door out of which the Buick had just come, and with that in view he turned his car towards the sidewalk on his right, but as he turned he discovered that his approach to the door was obstructed by pedestrians on

the sidewalk, and he turned his car still further to his right, with the result that he ran upon the sidewalk and struck the plaintiff at the instant plaintiff appeared on the outer edge of the sidewalk at the point where the collision occurred. Whether the Buick car stopped when its rear wheels reached the gutter (which would have left sufficient space for the Lincoln to pass between it and the street car track), or did not stop until it was within one or two feet of the south rail of the street car track, is a disputed fact on the record, but, however this may have been, we do not think the jury could in reason have concluded otherwise than that the appearance of the Buick in the street and apprehension on the part of Hale Cullom, the driver of the Lincoln, that his car would collide with the Buick if he went forward, caused him to turn the Lincoln to the sidewalk. Hale Cullom so testifies, and the record does not suggest any other reason for an experienced driver (which the record shows that he was) to do such an unusual and dangerous act as to drive a large automobile onto and across a sidewalk, as he did in the instance here under investigation—an act which was not only dangerous to pedestrians on the sidewalk, but perilous to the Lincoln and its occupants.

On behalf of defendant it was insisted on the trial in the circuit court, and is insisted here, that defendant's driver was confronted with a sudden peril and, in the emergency thus presented, he acted according to his best judgment, and, although for want of time in which to form a judgment he may not have acted in the most judicious manner, he is nevertheless not chargeable with negligence.

Pursuant to the theory just stated, defendant, through his attorney, presented to the trial judge two special requests for instructions to the jury. Request No. 1 was as follows: "If you believe from all the evidence in this case that the Buick automobile was negligently driven out into Broadway street in the path of the defendant's automobile and that this act placed the operator of defendant's automobile in a sudden emergency, and that the operator of defendant's automobile acted according to his best judgment, or because of want of time in which to form a judgment omitted to act in the most judicious manner, then I charge you that the operator of the defendant's automobile cannot be charged with negligence, and you should render a judgment in favor of the defendant."

And request No. 2 was as follows: "One who, in a sudden emergency, acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence."

The court added to request No. 2 these words: "Provided he was observing ordinary care at the time the sudden emergency

arose," and as thus qualified, he gave it in charge to the jury at the conclusion of his principal charge.

Request No. 1 was "refused" by the trial judge, with an explanation endorsed thereon in these words: "Already sufficiently covered by special request and in main charge."

The fourth assignment of error is based on the action of the trial judge in refusing defendant's request No. 1; and through his fifth assignment of error defendant complains of the action of the trial judge in qualifying his request No. 2 in the manner stated.

The defendant's theory of the case leaves out of view certain evidence in the record which we have not heretofore mentioned, and which must be taken into account. Jim Bowen, the driver of the Buick car, testified that when he drove out of the Stockell Motor Car Company's garage it was his purpose to drive directly across Broadway and into Fifteenth Avenue, north, but that as he came out of the door, driving very slow, he saw the Lincoln car "coming at a rapid speed," and that he stopped, after he had driven across the sidewalk, when the rear wheels of his car were in the gutter at the curb. This witness was an employee of the Stockell Motor Car Company and had been driving automobiles for about fifteen years. He testified that when he saw the Lincoln car approaching, and at the time its brakes were applied just before it turned toward the sidewalk, it was moving at a speed of thirty or thirty-five miles an hour.

There was also evidence of "skid marks" on the surface of the street which indicated that the Lincoln car was moving rapidly when its brakes were applied, and this evidence, in connection with the fact that the Lincoln mounted the curb and crossed the sidewalk, after "skidding" twenty-five or thirty feet was competent to go to the jury as tending to corroborate the statement of Jim Bowen that the Lincoln was moving at a speed of thirty or thirty-five miles an hour. (11 A. L. R., pp. 1402-1404).

At the time here in question (July 21, 1924), twenty miles an hour was the statutory speed limit for automobiles. If the Lincoln car was exceeding the statutory speed limit, the defendant was guilty of negligence. This court cannot weigh conflicting evidence in a case of this character. That was the function of the trial jury. It was for the jury to find, from the evidence, whether or not the defendant's driver was operating his car at an unlawful and excessive rate of speed, and, if the jury found this fact against the defendant, it was also their function to decide whether or not such negligence of the defendant was the proximate cause of plaintiff's injuries. 22 R. C. L., p. 148.

Defendant's special request No. 2, supra, embodied a correct statement of a legal principle. It is a quotation from 20 R. C. L.,

p. 29, which was quoted with approval by our Supreme Court in the case of Moody v. Gulf Refining Co., 142 Tenn., 280, 293, 218 S. W., 817. The same principle is recognized in the cases of Railroad Co. v. Gurley, 12 Lea, 46, 62-3; Marble Co. v. Black, 89 Tenn., 118, 125, 14 S. W., 479, and Chattanooga Electric Railway Co. v. Cooper, 109 Tenn., 308, 312-313 70, S. W., 72.

But the instructions requested in the present case, though abstractly correct as far as they go, were liable to mislead the jury as to the rule that should guide them in the application of the law to the facts, for the reason that the instructions requested ignore the rule that "one cannot shield himself behind an emergency created by his own negligence." Carpenter v. Campbell Automobile Co. (Iowa), 4 Neg. Com. Cas. Anno. 1, 32-3, 36-7.

It is a well-settled rule, supported by opinions of the courts of last resort in many jurisdictions, that an automobile driver who, by negligence of another and not by his own negligence, is suddenly confronted by an emergency and is compelled to act instantly to avoid a collision or injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice. Note, 27 A. L. R., p. 1197 et seq.

But the driver of an automobile cannot successfully invoke the emergency rule just stated, where his own negligence led him into the emergency. Allen v. Schultz (Wash.), 6 A. L. R., 676, and Anno., p. 681; Note 27 A. L. R., p. 1199.

The case of Carpenter v. Campbell Automobile Co., supra, bears a strong analogy to the instant case. In that case the plaintiff, while on the sidewalk, was struck by the defendant's automobile, which, according to some of the witnesses, was suddenly turned to the wrong side of the street to avoid a motorcycle, mounted the curb, and traveled along the sidewalk, without the brakes being applied. It was there held proper to refuse to instruct the jury to return a verdict for the defendant upon the theory that the evidence showed that the driving of the machine onto the sidewalk was the result of fright and excitement, since it was for the jury to say from the evidence whether the injury could have been avoided notwithstanding such emergency, by the exercise of reasonable care, and whether the emergency was due to the negligence of the defendant.

It was also held in Carpenter v. Campbell Automobile Co. that it was proper to refuse to give to the jury a requested instruction to the effect that if the act complained of by the plaintiff was the result of excitement and confusion produced by sudden and impending peril from an approaching motorcycle, and but for such excitement the automobile would not have been driven onto the

sidewalk, a verdict for the defendant should be returned, since the instruction, as requested, ignored the thought that if the emergency was produced by the defendant's own negligence it would not relieve him from liability.

In the case of Simonson v. Huff (Wash.), 215 Pac., 49, the court said: "An automobile driver may not violate the rules of the road, and then invoke the doctrine of sudden emergency to releive himself from liability to another who is injured as a result of his violation of such rules. The rule is applicable to those who are themselves without fault, not those who are at the time committing a wrong."

In the case of Allen v. Schultz, supra, the court said: "One who operates on the streets of a city such a dangerous instrumentality as an automobile is bound to take notice that he may be called upon to make emergency stops, and it is negligence on his part not to keep the automobile in such condition that such stops are possible."

In the case of Leach v. Asman, 130 Tenn., 510, 513, 172 S. W., 303, it was held that an automobile is not "an inherently dangerous instrumentality," in the sense that a high degree of care is required to be exercised in its use, but that the true rule is that the driver of an automobile is bound to exercise ordinary care, or that degree of care and caution which an ordinarily careful and prudent person would exercise under the same circumstances. However, by way of further elucidation of the rule just stated, the court said (in Leach v. Asman, at page 514): "What would be ordinary care in the operation of an automobile on a country road would not be ordinary care in its control on a much traveled city street.

"The measure of ordinary care, as such, is to be estimated by the risk entailed through probable dangers attending the particular situation, and is to be commensurate with the risk of injury to the pedestrian in the street, having in view the condition of traffic in the street at the time and place, and the nature and condition of the machine being operated."

We think there is evidence in the record which, if accepted by the jury as the truth of the case, was sufficient to show that the emergency with which defendant's driver was confronted was produced by his own negligence. The trial court, therefore, did not err in declining to direct a verdict for the defendant, and in refusing to grant a new trial on the ground that there was no material evidence to support the verdict of the jury.

We are also of the opinion that there was no error in the action of the trial court with respect to the two special requests of the defendant for instructions to the jury.

The first, second, fourth and fifth assignments of error are therefore overruled.

Through his sixth assignment the defendant asserts that the trial court erred in charging the jury as follows:

"Again, Gentlemen, the court charges you, that the law does not require impossibilities of the owner or driver of an automobile, and if you should find that while the defendant, Dr. Cullom, was riding in his automobile, being driven by his son, in an easterly direction on the right-hand side of Broad street, at a reasonable and lawful rate of speed, that his auto had just passed a street car moving in the same direction, and if you shall further find that another automobile came out of a building on the south side of the street and suddenly ran out into or near the middle of Broad street, in front of defendant's approaching automobile and so close to it that defendant's car could not be stopped by the observance of reasonable care and skill in time to prevent a collision, and if you shall further find that the defendant had only three courses to pursue: First, to turn to his left; second, to go straight ahead; and third, to turn to his right, and if you shall further find that on account of the nearness of the moving street car, it was dangerous to the safety and lives of those in defendant's car for him to turn to his left so as to go around in front of the other automobile, and if you shall further find that defendant's automobile was traveling at a reasonable and lawful rate of speed and that it was impossible to stop it by applying the brakes and doing everything in his power before coming into collision with the other automobile, if he went straight on ahead, and if you shall find that there was a reasonable chance by turning to his right and running his automobile into the pavement on the south side of Broad street and avoid doing any damage to anybody, then the defendant, and his son, who was driving the car, would be justified in turning to the right and in going into and upon the south pavement on Broad street, in order to prevent a collision with the automobile, which, it is insisted by the defendant, had appeared in the street in front of defendant's approaching automobile, provided defendant's driver exercised ordinary care in doing so."

It is argued for defendant that the last clause of the above-quoted paragraph of the charge entirely deprived the defendant of the benefit of the "emergency" doctrine. The argument of the learned counsel for defendant on this point is embraced in the following excerpt from his brief, viz: "Under a well-established principle of law, when a party is placed in a position of sudden peril or emergency through the negligence of another and because of want of time in which to form a judgment, omits to act in a most judicious manner, he is not chargeable with negligence, and

we respectfully submit and urge that it was error to charge that the plaintiff in error would have to 'exercise ordinary care in doing so,' that is, exercise ordinary care after being placed in the position of sudden peril or emergency. Moody v. Gulf Refining Co., supra. This part of the court's charge absolutely destroys any excuse or defense any defendant would have in any sort of a case where the defense was that the negligence of another person created a sudden emergency and placed the defendant in peril and under circumstances so pressing that the defendant didn't have time to stop and think what would be ordinary care.''

We do not think the charge is subject to the criticism thus offered. In that part of the charge quoted in the sixth assignment of error the court was stating the defendant's ''theory'' of the facts of the case, which included the hypothesis that ''defendant's automobile was traveling at a reasonable and lawful rate of speed,'' and he told the jury that, if the facts were as thus assumed, the driver of defendant's car was justified in turning to the right and in going into and upon the south sidewalk of Broadway in order to prevent a collision with the Buick car, provided he ''exercised ordinary care in doing so.'' It was proper to add the proviso just quoted, for the driver of an automobile cannot be absolved from liability for injury to another on the ground that he was acting in an ''emergency,'' merely because it appears that the emergency was not brought about by his own negligence, if the proof shows that the injury to the plaintiff could have been prevented by the exercise of ordinary care on the part of the defendant after the peril had passed. Allen v. Schultz, supra. The sixth assignment of error is overruled.

The seventh assignment is in these words: ''The court erred in that the court failed to state defendant's theory of the case as clearly as the facts of the case called for.'' This assignment does not conform to the rules of this court, in that, it is not sufficiently specific. 151 Tenn., p. 815. It is ''too broad and general to be considered.'' Cooperative-Stores Co. v. U. S. Fidelity & Guaranty Co., 137 Tenn., 609, 613, 632, 195 S. W., 177.

In his eighth assignment of error defendant quotes from his motion for a new trial (filed in the circuit court) a purported excerpt from the argument of plaintiff's counsel on the trial before the jury, and which, he alleges, was improper, and he says that the court erred in refusing to grant the motion for a new trial on account of the said improper argument of counsel for plaintiff in addressing the jury.

It does not appear from the record that the plaintiff's attorney made the argument stated in the assignment of error and in the motion for a new trial. A motion for a new trial is merely a plead-

ing, and the court cannot act upon unsupported averments in the motion. Sherman v. State, 125 Tenn., 19, 48-49, 140 S. W., 209; Richmond Type & Electrotype Foundry v. Carter, 133 Tenn., 489, 593, 182 S. W., 240; T. C. Railroad Co. v. Vanhoy, 143 Tenn., 312, 334, 226 S. W., 225. The eighth assignment of error is overruled.

This disposes of all the assignments of error except the third, which is that "the court erred in declining to grant motion of the defendant because the verdict was so excessive as to indicate prejudice, passion and caprice upon the part of the jury."

As before stated, the verdict was for $2000, and the court rendered judgment for that amount.

Plaintiff was a carpenter who was ordinarily able to obtain steady employment, and for some time prior to the injuries for which he sues in this case his average earnings had been about $135 per month.

Plaintiff was injured on Monday morning (July 21, 1924) and was, at the instance of defendant Cullom, carried to a hospital where he received medical attention and where he remained until the following Saturday, when he was removed to his home in the city of Nashville. Following his removal to his home from the hospital plaintiff was confined to his bed for two weeks, and thereafter he walked on a crutch until the ensuing September. Since he discarded the crutch, plaintiff has walked with a cane as a matter of necessity. He has never been able to resume his occupation as a carpenter. He obtained a commission as a deputy sheriff in order that he might make collections, and in that way he has earned at times as much as $35 per month.

Such, in brief, is the description of plaintiff's injuries disclosed by his own testimony and other witnesses in his behalf. The evidence shows that plaintiff suffered no broken bones, but that he received two severe bruises,—one in the neighborhood of the sacroiliac joint, and one on his breast. Plaintiff was an able-bodied man, in good health, before he received the injuries here under investigation.

If the testimony of the plaintiff and his witnesses is to be believed, the plaintiff's earning power has, in great measure, been permanently destroyed as a result of the injuries for which he sues in this case. The credit to be given to the testimony of the witnesses in the case was a matter for the jury to decide, and in actions for personal injuries the amount of the damages to be awarded is "a matter dependent most largely upon the judgment of the jury, and their sound discretion, after carefully, honestly, and fairly considering all of the various elements that enter into the question." Davidson Benedict Co. v. Severson, 109 Tenn., 572, 616, 72 S. W., 967.

In the case of Ferry Companies v. White, 99 Tenn., 256-272, 41 S. W., 583. White suffered personal injuries as the result of the negligence of the Ferry Companies and obtained a verdict, and a judgment thereon, for $3500 in the circuit court, from which judgment the Ferry Companies appealed, and, in the course of its opinion affirming the judgment, the Supreme court said:

"We are asked to reverse this judgment upon the ground that the verdict is excessive. The testimony shows that the defendant in error was shot through the finger and the thumb of his left hand, that his right arm was perforated, from his shoulder to his hand, with shot, a great number of which were never extracted. It also appears that several shot entered the right leg and one at the joint of left ankle. While the surgeon who attended him said he regarded the wounds as not at all serious, yet there is testimony, upon which the jury were warranted in acting, that this injury has permanently affected his strength, and especially his capacity for lifting, a power very valuable to him as a laboring man. This question of damages was one peculiarly for the jury, and, in the absence of a conviction that their verdict is the result of caprice, prejudice or corruption, we do not feel authorized to interfere with it."

We have found nothing in the record which would justify the conclusion that the verdict in the pending case was the result of prejudice, passion or caprice on the part of the jury, and the third assignment of error is overruled.

It results that the judgment of the circuit court is affirmed. Judgment will be entered here in favor of plaintiff Glasgow and against defendant Cullom for $2000, with interest thereon from the date of the judgment below (November 5, 1925), and for the costs accrued in the circuit court. The costs of the appeal will be adjudged against defendant Cullom and the surety on his appeal bond.

Crownover and DeWitt, JJ., concur.