## CHUMLEY v. ANDERTON.—103 S. W. (2d) 331.

Middle Section. October 10, 1936.

Petition for Certiorari denied by Supreme Court, March 27, 1937.

Trabue, Hume & Armistead, of Nashville, and J. Roy Hickerson, of Winchester, for plaintiff in error.

Walker & Hooker, of Nashville, and Lynch, Haynes & Green, of Winchester, for defendant in error.

DeWITT, J. In this action Dr. M. W. Anderton, a dentist of Winchester, was awarded by a jury a verdict for $15,000 against H. Chumley, as damages for personal injuries sustained from the alleged negligence of Chumley while they were riding on Michigan avenue in the city of Detroit, Michigan, in a Ford car owned and driven by Chumley, at about 2 o'clock in the morning of January 15, 1935.

No testimony was offered by the defendant. In his behalf, however, a motion for peremptory instructions was made and overruled. Conceiving that the evidence showed without contradiction, and by any reasonable inference therefrom, that as a matter of law the defendant was guilty of actionable negligence, the trial judge, of his own motion, instructed the jury to find that the defendant was liable to the plaintiff; and he submitted to the jury only the question of the amount of damages to be awarded. A motion for a new trial was overruled, with the exception that a remittitur of $3,000 was suggested and this was accepted under protest. Judgment was thereupon entered for $12,000 and costs. Both parties have appealed in error—the plaintiff complaining of the remittitur, the defendant of the judgment.

 The defendant in error (herein called plaintiff, as below) is not in a position in this court to complain of the remittitur, because it does not affirmatively appear that it was based on passion, prejudice, or caprice on the part of the jury. It seems to have been due to mere excessiveness, error of judgment, and not to the aforesaid motives. Under Code, section 8987, it is only when it appears that the ground for suggestion of remittitur was passion, prejudice, caprice, or corruption on the part of the jury that the plaintiff may accept under protest and challenge the remittitur on appeal in error. It is that statute which affords to a plaintiff any right to such appeal; and the acceptance of a remittitur which is not suggested on the grounds named in the statute is binding on the plaintiff and the question cannot then be raised on appeal. Yarbrough v. Louisville & N. R. Co., 11 Tenn. App., 456. The plaintiff's assignment of error must be overruled.

In behalf of the plaintiff in error (hereinafter called defendant, as below), it is insisted that his motion for peremptory instructions should have been sustained, and that it was error to direct the jury to return a verdict in favor of the plaintiff upon the issue of liability.

As to the relationship between the parties and the cause of the injuries, the following facts appear without dispute:

Chumley, also a resident of Winchester and a friend of Dr. Anderton, owned and operated the Winchester Motors Company which had the agency for the sale of Ford automobiles in Franklin county, Tennessee. Dr. Anderton had previously purchased some two or three Ford automobiles from him. In November, 1934, Dr. Anderton entered into a contract with Chumley for the purchase of a new 1935 model Ford Tudor sedan and at that time as a part payment therefor he delivered to Chumley at an agreed valuation his 1933 model Ford automobile, but the 1935 model car which Chumley agreed to deliver to Dr. Anderton in Winchester was then in the course of manufacture and was not on the market for sale for delivery in Franklin county. Just when it would be ready for delivery was

not apparent to them. Dr. Anderton was very desirous of having this new car and Chumley wanted to obtain as soon as he could the money which Dr. Anderton was to pay him as a balance of the purchase price. Chumley intended to go to Detroit, Michigan, in January to attend a meeting of automobile dealers. He invited Dr. Anderton to go with him, but the invitation was declined. About one week later he again extended the invitation, whereupon Dr. Anderton told him that he would go with him if Chumley would endeavor to procure in Detroit delivery of the new car, pay all the expenses of the trip, and agree that Dr. Anderton would drive the new car from Detroit to Winchester, at which latter place delivery would be accepted. Chumley agreed to this proposition and by virtue of the agreement they left Winchester early on Sunday, January 13, 1935, in a car owned and driven by Chumley, arriving at Detroit that evening. They registered at a hotel. The next morning Chumley took Dr. Anderton to a Ford Agency in Detroit operated by Mr. Cortz, to whom Chumley had a letter of introduction. Mr. Cortz was a former secretary to Mr. Henry Ford. Dr. Anderton did not know him. The new 1935 Ford Tudor sedan, which Dr. Anderton and Chumley were interested in obtaining in Detroit, was being manufactured by the Ford Factory and several of such cars were upon the streets of Detroit at that time.

The price which Dr. Anderton was to pay for the new car included the regular transportation charges from the factory to Winchester. Dr. Anderton wanted the car as soon as he could get it as he had delivered his old car to Chumley some weeks before. Chumley wanted Dr. Anderton to drive the car to Winchester because the expense thereof, plus the other expenses of Dr. Anderton's trip, would be less than the cost of the freight from Detroit to Winchester. Chumley, as aforesaid, had also the motive of getting the balance of the purchase price as soon as possible. The title to the car was not to pass until it should reach Winchester and the sale consummated.

When they interviewed Mr. Cortz, he could not give them any assurance as to getting the car, but Chumley believed that he might be able to do so and impressed Dr. Anderton with the idea that Mr. Cortz would have special influence in getting the car. Mr. Cortz sent them to visit the Ford Motor Company's factory. Upon their return they revisited Mr. Cortz and he invited them to his home for dinner. Dr. Anderton told Chumley that as he was a stranger he did not want to go, but upon Chumley's insistence he agreed to go. Chumley gave as the reason for his insistence that if they would talk to Mr. Cortz they might be able to accomplish something through him, although the prospect did not seem favorable and yet they would talk to him further. This was Dr. Anderton's purpose in accepting the invitation. About an hour and a half after the dinner, they went with Mr. and Mrs. Cortz, at their invitation, to a club to witness some

sort of entertainment. When this was over at a late hour, Dr. Anderton and Chumley started back toward their hotel, first taking Mr. and Mrs. Cortz to their home. From there Chumley drove his car toward the hotel. Dr. Anderton was on the front seat with him. It was after midnight. They drove along a wide street, known as Michigan avenue, westwardly toward the hotel. Along this avenue were two parallel street car tracks. At intersecting streets were safety zones, several of which they passed before the accident occurred. Chumley was driving at the rate of about 40 miles an hour. The traffic on the street was light. At one time Dr. Anderton requested Chumley not to drive quite so fast, and he slowed up, but quickened the speed again. They were approaching Cicotte avenue, an intersecting street where was one of the safety zones. It was well lighted from a pole. About a foot to the right of the pole there was a line of small iron poles marking off the safety zone, one of these being at a corner and at the end toward them. When they were about at that intersection, Chumley undertook to pass around the left of a car in front of him going in the same direction, and crashed his car into that iron pole at the corner, bending it considerably. Dr. Anderton was very painfully and seriously injured from the impact.

The lights were burning on Chumley's car and there was no obstruction to his view of the safety zone and the post. In trying to pass the car at that place, he just did not miss the post.

In behalf of Chumley, a defense made below and insisted upon here was and is that Dr. Anderton was the guest of Chumley in the car; that the undisputed evidence showed that the accident was not caused by the gross negligence or wanton and willful misconduct of Chumley; that Chumley was therefore not liable, because of the statute of the state of Michigan in force, which is as follows (Comp. Laws Mich., 1929, section 4648):

"That no person, transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought."

The trial judge was of the opinion that this statute was not applicable to the facts of this case, because Dr. Anderton was not a guest, the parties being at the time engaged in the furtherance of a common purpose, mutual to them, in the consummation of which each would receive substantial benefits. This court is of the opinion that this was not error. This undisputed evidence warrants only the conclusion that Dr. Anderton was not a mere guest. The statute is based upon the relation of host and guest. It is obvious that there

was a very substantial mutual interest, a common purpose which these men were jointly promoting even at the time of the accident. The purpose was to get the new Ford car as soon as possible so that Dr. Anderton could drive it back to Winchester, and Chumley would consummate the sale, get his money, and save something in cost of transportation of the car to Winchester.

The distinction is carefully stated in Blashfield's Cyclopedia of Automobile Law (Permanent Ed.), section 2292, as follows:

"If in its direct operation it confers a benefit only on the person to whom the right is given, and no benefits, other than such as are incidental to hospitality, companionship or the like, upon the person extending the invitation, the passenger is a guest within the statutes; but if his carriage tends to the promotion of mutual interest to both himself and the driver, and operates for their common benefit, or if it is primarily for the attainment of some objective or purpose of the operator, he is not a guest within the meaning of such enactment"—citing many authorities.

In determining who are guests within the meaning of an automobile guest statute, it is held that the enactment should not be extended beyond the correction of the evils which induced their enactment. The reasons of the enactment of such a statute do not apply to a situation arising out of the ordinary business transaction. Crawford v. Foster, 110 Cal. App., 81, 293 P., 841; Russell v. Parlee, 115 Conn., 687, 163 A., 404.

The aforesaid statute of Michigan was construed in McGuire v. Armstrong, 268 Mich., 152, 255 N. W., 745, 747. In that case the plaintiff's intestate was riding in an automobile with a nurse employed by the county, for the purpose of having glasses fitted. Neither the plaintiff's intestate nor her husband was paying for the treatment to her eyes and for the transportation. She accepted the transportation under the direction of the county, which had assumed charge of the case. In holding that the deceased, who was riding with the county nurse, was not a guest, the Supreme Court of Michigan said:

"The consideration need not pass from the passenger to the driver. If the driver receives a direct benefit from another, the service is not gratuitous and there is no guest relationship. . . . The word 'guest' connotes both a social relationship and the existence of a host. Neither situation is present in this case. . . . Passengers were held not to be guests in the following cases: Farm employee driven to work by employer, Russell v. Parlee, 115 Conn., 687, 163 A., 404; servant being driven by employer to buy shoes for use in employment, Knutson v. Lurie [217 Iowa, 192] 251 N. W., 147; nurse riding with patient, Hart v. Hogan, 173 Wash., 598, 24 P. (2d), 99; one to whom a car was being demonstrated, Crawford v. Foster, 110 Cal. App., 81, 293 P., 841, and Bookhart v. Greenlease-Lied Motor Company,

215 Iowa, 8, 244 N. W. 721 ;[82 A. L. R., 1359] ; . . . prospective employee looking over a paper route, Sumner v. Edmunds, 130 Cal. App. 770, 21 P. (2d) 159.''

In Hunter v. Baldwin, 268 Mich., 106, 255 N. W., 431, 432, the Supreme Court of Michigan, in passing on the question of who is a guest, said:

''On the other hand, not everyone riding in a car without payment is a guest. A prospective purchaser of the automobile is not a guest within the Guest Act. Crawford v. Foster, 110 Cal. App., 81, 293 P., 841. Accord, Bookhart v. Greenlease-Lied Motor Company, 215 Iowa, 8, 244 N. W., 721 [82 A. L. R., 1359]. [Approving the Massachusetts Rule.] While Massachusetts has no Guest Act, the courts of that state have evolved a guest rule by judicial decision. However, they have held that one who is a passenger for the mutual benefit of both parties is not a 'guest.' In Lyttle v. Monto, 248 Mass., 340, 142 N. E., 795, a nine year old boy had been requested by the driver of a delivery truck to show him to a certain address. The court allowed the boy to recover for personal injuries on the ground that he was not a guest.''

In the instant case there is no substantial dispute as to what were the respective purposes or conditions for or upon which the transportation was undertaken, relative to the nature and existence of the benefits conferred upon the parties respectively. It appears affirmatively without dispute that the purpose of these gentlemen in accepting the hospitality of Mr. Cortz at his home and at the club was primarily, if not wholly, to enlist his active friendship in trying to get the new car. Their return toward the hotel was but a part of this expedition.

▇▇▇▇ Chumley, the owner and driver of the car, was therefore under the requirement of ordinary, reasonable care for the safety of Dr. Anderton, under the circumstances. Upon this subject this court presumes the law of Michigan was the same as that of Tennessee. As to a guest, it is clearly settled that the operator of the automobile will be liable to him for injuries caused by failure to exercise ordinary care for his guest's safety. Tennessee C. R. Co. v. Vanhoy, 143 Tenn., 312, 226 S. W., 225; Tennessee C. R. Co. v. Melvin, 5 Tenn. App., 85. The question of imputation of negligence to a joint adventurer with the operator when the person sued is the third party is not here before us. The question is between the two occupants themselves.

In Burris v. Farrell Bros., 14 Tenn. App., 121, it is said, quoting from Berry on Automobiles (6 Ed.), section 644, p. 514:

''The test in determining the question (of joint enterprise). is whether the persons were jointly operating or controlling the movements of the vehicle in which they were riding. In order that there be such a joint undertaking it is not sufficient merely that the pas-

senger or occupant of the machine indicate to the driver or chauffeur the route he may wish to travel, or the place to which he wishes to go, even though in this respect there exists between them a common enterprise of riding together. The circumstances must be such as to show that the occupant and the driver together had such control and direction over the automobile as to be practically in the joint or common possession of it.''

It is also stated that this text is in accord with the principle stated in Schwartz v. Johnson, 152 Tenn., 586, 280 S. W., 32, 47 A. L. R., 323. The question before us is not ruled in Claxton v. Claxton, 16 Tenn. App., 399, 64 S. W., (2d) 854, 856, for in that case it was held that hosts employing an automobile in a joint purpose and being partners in its ownership were engaged in a joint enterprise so as to make both of them liable for the negligence of the one who was driving, to guests who were injured. The court said, ''under the definition of Schwartz v. Johnson, 152 Tenn., 586, 280 S. W., 32, 47 A. L. R., 323 we do not think the plaintiffs were engaged in such joint enterprise as would make the negligence of the driver imputable to them.'' The action was not between the two parties engaged in the joint enterprise.

█ The question here involved seems not to have been definitely ruled in Tennessee; but we see no good reason why one joint entrepreneur should not be held liable to the other for the consequences of his negligence when the negligence could not have been reasonably anticipated and the injured person had no opportunity to exercise control over the movements of the car. We concur with the trial judge in his interpretation, as follows:

''My notion is that the proximate cause of this accident became operative at the time the defendant started to turn his car to the left to pass the car in front. From this point in time until the collision with the post was a fractional part of one second. It is inconceivable that the plaintiff could have done or said anything within this time that would have prevented or tended to prevent the collision. My judgment is that there was nothing in the conduct of the defendant prior to the beginning of the proximate cause to indicate to the plaintiff that the defendant would suddenly turn and drive into an obstruction in the street.''

██ As to such liability, the decisions in other jurisdictions are somewhat in conflict; but in Blashfield's Encyclopedia of Automobile Law (Permanent Ed.), section 2373, these decisions are summarized, respectively, as follows:

''There are a few intimations and expressions of opinion which incline to the position that, where the injured person has such equal right of control as exists in case of a joint enterprise, and, without protest, permits the driver to go negligently into danger in a matter within the scope of the joint agreement, he should be barred from

recovery from the driver on account of the ensuing injury, on the ground of imputed negligence. The definite trend and preponderance of the authorities, however, rejects this doctrine and discards its underlying reasoning, holding instead that there is no rule of law that casts its mantle of protection over the tortious actions of an associate in a joint enterprise, and that the operator of an automobile in the course of an enterprise jointly engaged with another occupant may be held responsible for injuries to the latter to which his negligence in driving has proximately contributed; and the driver is liable for his personal negligence alike whether the person injured is a guest or engaged in a joint enterprise.''

To the same effect is the text in Berry on Automobiles (7. Ed.), vol. 5, p. 227. Many cases in support are cited under these statements. The rule deduced from these authorities is that though occupants of an automobile are engaged in a joint enterprise, the driver owes to the others the duty of exercising due care; and that for a violation of this duty he is liable to them—just as one partner would be liable to another, or an agent would be liable to his principal, for wrongs inflicted upon the person or property of the one seeking to recover. In other words, his negligence is not imputable to his joint adventurer, or entrepreneur, as between themselves. See annotations, 62 A. L. R., 436; 85 A. L. R., 626.

This rule of liability between joint adventurers is not in conflict with the opinion in Hurt v. Yazoo & M. V. R. Co., 140 Tenn., 623, 205 S. W. 437, that the negligence of a doctor in driving his automobile could not be imputed to his associate, equally negligent, whom he assisted in the performance of an operation, in the success of which both were interested, and whom he carried as his guest to the patient's residence.

When the facts are undisputed, the court must yet determine whether or not diverse inferences can reasonably be drawn from them. If not, the question of negligence or contributory negligence will arise as a matter of law.

As the Michigan statute is not applicable, it is not necessary to determine whether or not Chumley was guilty of gross negligence or willful and wanton misconduct. If it appears as a matter of law that he was guilty of violation of his duty to exercise that degree of care which an ordinarily prudent person would observe under the circumstances, and that this was the proximate cause of the accident, then the trial judge did not commit error in instructing the jury to find for the plaintiff upon the issue of liability.

At this stage it is urged that the jury could reasonably have determined one or all of three things:

First, that the small posts could not be seen until Chumley started around the other car and then it was too late for him to avoid striking them. We fail to see how this would excuse him from bring-

ing his car rapidly and suddenly around another car when he knew he was approaching the safety zone, which was well lighted, if before he turned, his vision was obscured. It could only be concluded that an ordinarily prudent person, being so near the safety zone and going at 40 miles an hour, would not try to pass the other car, but would follow on in a straight course.

Second, that an emergency arose when Chumley first saw the small post which he ran into and that he did the best he could under the emergency. This would not excuse him because he had produced the very emergency and it was not necessary. Cullom v. Glasgow, 3 Tenn. App., 443.

Third, that Chumley was in a strange city and reasonably thought the safety zone post which had the light on it would be the post that would be closest to his automobile, and that he was guilty of no negligence in striking the small post which did not have a light on it.

The evidence shows without dispute that they had already passed several of these safety zones which had posts of similar size and arrangement. We do not think that a jury could reasonably exonerate him from the charge of negligence in turning suddenly to pass the other car almost at the place at the rate of 40 miles an hour. He had before him a situation which involved obvious risks. Ordinarily, prudent driving would not have been of that sort.

It is further contended that the jury could reasonably have found that Dr. Anderton was guilty of contributory negligence. He was not required to anticipate that the driver would be guilty of negligence, as there is no evidence that theretofore he had been guilty of negligence. He had no reason to anticipate that Chumley would try to pass the car and would run into the post. As the trial judge said, "It all happened in about the fraction of a second." Dr. Anderton had the right to think that Chumley would keep a lookout as to safety zones, as nothing in his previous driving had called for a warning as to them. It is true that he had once asked him to slow down his speed, and he had done so and then resumed the speed; but the accident was not caused by speed alone, but by passing the car and running into the post. If he had not tried to pass the car, the speed itself would not have produced the accident. We cannot see in the facts anything requiring submission to the jury of the question of contributory negligence.

We are therefore of the opinion that there was no error in the denial of the motion of the defendant for peremptory instructions, and then in the instruction to the jury to find for the plaintiff upon the issue of liability.

Upon the hearing of the motion for new trial, one ground assigned was alleged misconduct of certain of the jurors in stating in the jury room that the defendant carried insurance and would never have to pay any of the judgment that might be rendered against him.

Two jurors stated in their affidavits that about half of the jurors made statements to this effect. Affidavits by eight other jurors were presented denying these statements and tending to show that the verdict was reached without any mention of insurance having been made. The evidence thus given does not preponderate against the finding by the circuit judge that the verdict was not tainted with such an element or influence. Furthermore, the bill of exceptions does not recite that this was all the evidence heard at the hearing of the motion for a new trial. The assignment challenging the verdict upon this ground must therefore be overruled.

It is further insisted that the award of $12,000 is excessive and so excessive as to evince passion, prejudice, or caprice on the part of the jury.

The evidence as to the injuries, sufferings, loss of earning capacity, and necessary expenses for hospital and doctor's and surgeon's bills, sustained by the plaintiff, has been carefully read and considered. It is not deemed necessary to recite this in detail. We cannot see that this judgment is even excessive. We cannot substitute our judgment for that of a jury and the trial judge, who not only heard the plaintiff testify, but also saw the physical marks of his injuries, and observed the effects of the injuries upon his general physical condition. There is substantial evidence that the plaintiff has some effects which are permanent, impairing not only his general health, but also his ease and comfort and even his earning capacity. His expenses were very heavy. His sufferings were long and intense.

All of the assignments of error are therefore overruled and the judgment of the circuit court is affirmed. Judgment will be entered in this court in favor of Dr. M. W. Anderton against H. Chumley for the sum of $12,000, with interest from January 18, 1936, and all costs of this cause. The costs of the appeal will also be adjudged against the surety on the appeal bond.

Faw, P. J., and Crownover, J., concur.