JAMES ROBERT ARCHIE by Next Friend, J. H. ARCHIE,

*v.*

JOHN TAFT YATES

(*Jackson,* April Term, 1959.)

Opinion filed May 1, 1959.

Rehearing denied June 5, 1959.

MILES & MILES, Union City, FRED ROBERSON, Tiptonville, for petitioner-plaintiff in error.

30

EWELL & EWELL, M. WATKINS EWELL, Dyersburg, WILLIAM B. BLACK, Tiptonville, for respondent-defendant in error.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

The Court of Appeals approved the action of the Trial Judge in directing a verdict for the defendant in this tort action. Certiorari alleging error upon the part of the Court of Appeals in so doing was granted. The petitioner, James Robert Archie, is the original plaintiff, and the respondent, John Taft Yates, is the original defendant.

Archie and Yates were each about seventeen years of age at the time of the automobile traffic accident which inspired this tort action in behalf of the injured Archie for resulting damages based on a declaration charging

Yates, who was driving the automobile, with (1) common law negligence consisting of a failure to keep a lookout ahead and failing to have the car under proper control, and (2) a violation of the statute fixing the speed limit in the driving of an automobile over the public highway at a speed in excess of fifty-five (55) miles per hour at night.

These two boys had been double dating two young ladies who resided in Lake County. On occasions the four went driving. Sometimes it was in the automobile of defendant's father. At other times it was in the automobile of plaintiff's father. On this occasion they were using the automobile belonging to the father of the plaintiff.

Archie had an injured leg. His father told him that he could take the car in dating the young lady on this occasion "if I got some one else to drive". Yates, defendant here, and with whom Archie was double dating, said that he, Yates, would do the driving.

These boys had taken the young ladies to their respective homes and were returning to plaintiff's home when the accident occurred. Yates was driving, and Archie was seated beside him. It was about midnight. There was a mule weighing about 1,400 pounds standing in the middle of this hard surfaced highway. That highway was straight for a considerable distance on each side of the mule. Visability was normal, and they were not meeting another car. The automobile struck the mule and knocked it thirty-five (35) feet. The car then proceeded a distance of one hundred and three (103) feet, then left the highway, proceeded eighty-seven (87) feet to, and through, a two foot ditch and fence, knocking

out of the ground a twelve (12) inch in diameter post set three (3) feet therein. The testimony is that Yates was driving between seventy (70) and seventy-five (75) miles per hour at the time. It is for the injuries thereby received that Archie sues. That such injuries resulted from Yates' negligence must be conceded, as apparently it is.

Archie had the right and duty of controlling the manner in which the automobile was being driven on this occasion.

The Court of Appeals at the outset of its opinion said:

"The determinative issue of the cause is whether or not the negligence of the defendant must be imputed to the plaintiff so as to bar his right of action."

The Court concluded that the case

"does not involve a situation of a joint enterprise as between plaintiff and defendant, but rather that of a vice principal, plaintiff having been entrusted with the care and supervision of the automobile in which he was riding, and being responsible for the operation of same."

And, in deciding that the Trial Court did not err in directing a verdict for defendant driver of the car, ended its opinion with this statement:

"In the instant case, we think the plaintiff should be treated as the alter ego of his father, the owner of the car, and that he must be treated and considered as operating the car at the time of the accident through his own alter ego, the defendant, who was driving in his place and stead. The negligence of the defendant in operating the car must therefore be imputed to the plaintiff so as to bar the right of action."

The holding of the Court of Appeals thus is that as between Archie and Yates, Archie must be regarded as the principal and Yates as his agent.

Therefore, the decision of the Court of Appeals is that in a tort action by the principle against his agent for damages resulting from the injuries to the principal caused by the negligence of the agent, this negligence of the agent is imputable to the principal so as to bar the principal's right of action against the agent. Is this the law? The Court of Appeals in so holding said that it based its decision upon *Wilson v. Mullen,* 11 Tenn.App. 319, 337; *Wilson v. Moudy,* 22 Tenn. App. 356, and *Pikeville Fuel Company v. Marsh,* 34 Tenn.App. 82, 232 S.W. 2d 789, 794.

In *Wilson v. Mullen,* supra and *Wilson v. Moudy,* supra, the injured plaintiff was *a third party.* As to such third party the doctrine of imputed negligence applied to the principal for the negligence of his agent. In all probability the Court of Appeals overlooked this fact. At any rate, neither of these cases is in point here, where the principal is suing the agent for injuries inflicted upon him by reason of the agent's negligence.

*Pikeville Fuel Company v. Marsh,* supra, the third case referred to by the Court of Appeals in support of its conclusion, and very strongly relied upon by defendant Yates in this case, is not regarded by this Court as being in point in this case.

This Pikeville Fuel Company case, unlike the two preceding cases cited by the Court of Appeals, is one in which, as in the case at bar, the principal, as plaintiff, is suing his agent and also the agent's master for injuries

received by reason of the negligence of this agent in the driving of the motor bus belonging to, and being operated for the benefit of the master Pikeville Fuel Company, and under the immediate supervision and control of Marsh, the plaintiff in this case, who, as foreman over the driver, and present in the bus, had ''control over the bus and over the operation thereof by the defendant'', driver.

It was apparent to this principal, the plaintiff, who was on the bus, that it was being driven in a reckless and negligent manner by his agent at the time,—the defendant. But he never directed this driver, his agent, to cut down his speed, or change his manner of driving. In admitting this dereliction he answered: '' 'No, I had been asked to but I didn't'. To the question, 'Who asked you', he answered 'some of the boys who was riding' ''.

Such being the undisputed record, the Court of Appeals held as follows:

''It therefore appears that although the plaintiff was fully cognizant of the reckless propensities of the driver of the bus as well as his manner of operation of the vehicle on the occasion in question, he not only took no precautions for his own safety, but allowed to go unheeded the requests of others for whose safety he was, at least to a degree, responsible.

''We are of the opinion that, under such circumstances, a plaintiff cannot recover.''

Having thus decided the case, the Court then unnecessarily entered into a discussion of the law as to whether the negligence of an agent is imputable to his principal so as to bar the action of the principal against the

agent for injuries received by this principal by reason of the negligence of his agent. This discussion had no place in the already decided lawsuit, and should not be regarded as a precedent, though apparently it was inadvertently so regarded by the Court of Appeals. In so far as it may be regarded as a precedent, it is contrary to the great weight of authority and is unsound on principle, in this Court's view of the matter.

In the case of *Chumley v. Anderton,* 20 Tenn.App. 621, at page 628, 103 S.W.2d 331, 336, the Court, after observing that the question stated "seems not to have been definitely ruled in Tennessee", quoted then from Blashfield's Encyclopedia of Automobile Law as follows:

" 'There are a few intimations and expressions of opinions which incline to the position that, where the injured person has such equal right of control as exists in case of a joint enterprise, and, without protest, permits the driver to go negligently into danger in a matter within the scope of the joint agreement, he should be barred from recovery from the driver on account of the ensuing injury, on the ground of imputed negligence. The definite trend and preponderance of the authorities, however, rejects this doctrine and discards its underlying reasoning, holding instead that there is no rule of law that casts its mantle of protection over the tortious actions of an associate in a joint enterprise, and that the operator of an automobile in the course of an enterprise jointly engaged with another occupant, may be held responsible for injuries to the latter to which his negligence in driving has proximately contributed; and the driver is liable

for his personal negligence alike whether the person injured is a guest or engaged in a joint enterprise.'

"To the same effect is the text in Berry on Automobiles (7 Ed.) Vol. 5, p. 227. Many cases in support are cited under these statements, the rule deduced from these authorities is that though occupants of an automobile are engaged in a joint enterprise, the driver owes to the others the duty of exercising due care; and that for a violation of this duty he is liable to them— just as one partner would be liable to another, *or an agent would be liable to his principal,* for wrongs inflicted upon the person or property of the one seeking to recover. In other words, his negligence is not imputable *to* his joint adventurer, or entrepreneur, *as between themselves.* See annotations, 62 A.L.R. 436; 85 A.L.R. 626." (Emphasis added.)

The foregoing statement was approved in *Hamilton v. Peoples,* 38 Tenn.App. 385, 274 S.W.2d 630, 634. The decision then added that:

"The weight of authority in other jurisdictions seems to support the above rule." (Citing authorities.)

The text of 38 American Jurisprudence, Section 238, page 925, and in support of which some authorities are cited, is this:

"The doctrine of joint enterprise whereby the negligence of one member of the enterprise is imputable to others, resting as it does upon the relationship of agency of one for the other, does not apply in actions between members of the joint enterprise and does not, therefore, prevent one member of the enterprise from holding another liable for personal injuries inflicted

by the latter's negligence in the prosecution of the enterprise. In other words, the doctrine of common or joint enterprise as a defense is applicable only as regards third persons and not parties to the enterprise. Ordinary negligence on the part of a member of a joint enterprise, resulting in injury to the other member, renders him liable for the injury."

It is likewise so expressed in 5 American Jurisprudence, Section 502, page 788. There to the expression "joint enterprise" is added the expression "or common adventure".

█ It was likewise so held in the Oregon case of *Smith v. Williams,* 180 Or. 626, 178 P.2d 710, 719, 173 A.L.R. 1220, 1231, wherein the Court made this observation:

"In other words, the doctrine of common or joint enterprise as a defense *is applicable only as regards third persons* and not parties to the enterprise. Ordinary negligence on ·the part of a member of a joint enterprise, resulting in injury to the other member, renders him liable for the injury." (Emphasis added.)

In holding likewise the Washington Court in *O'Brien v. Woldson,* 149 Wash. 192, 270 P. 304, 305, 62 A.L.R. 436, 439, said this:

"When the action is brought by one member of the enterprise against another, there is no place to apply the doctrine or imputed negligence. To do so would be to permit one guilty of negligence to take refuge behind his own wrong. The situation when the action is brought by one member of the enterprise against the other is entirely different from that when recovery is sought against a third person."

The principle which produced this rule would, of course, be applicable to a suit between the principal and his agent, as well as to a suit between members of a joint enterprise, as pointed out in *Chumley v. Anderton,* supra, in quoting from the text of Berry on Automobiles.

■ On principle, the holding of these cases cannot be logically assailed as unsound. To say that an agent who, by his negligent conduct, injures his principal, who is not guilty of proximate contributory negligence, cannot be made to respond in damages on the ground that he is the agent of the principal is to say that which does not seem to be either logical or just.

So, there remains for decision the insistence of petitioner that the evidence is such as to require a submission to the jury of the question as to whether the principal, Archie, was guilty of proximate contributory negligence.

Shortly before this car was driven against the mule, there appeared in the highway a cow. At that time Yates was driving beyond the speed limit. The car did not, however, strike the cow. The testimony of plaintiff Archie then continues as follows:

"Q. With reference to the scene of the accident which happened that night, about how far would you say it was from where you saw the cow to the scene of the accident? A. I guess about one-half mile.

"Q. Is that your best judgment? A. Yes, sir.

"Q. What, if anything, happened or what did you say to John Taft Yates with reference to when you saw the cow? A. I asked him to take it easy as there might be some more up there.

"Q. What did you mean by that? A. To slow down some.

"Q. When you told him to take it easy did he slow down? A. Yes sir he did.

"Q. To about what speed? A. About 50 or 55.

"Q. About how long did he remain at that speed of 50 or 55? A. About 200 to 300 yards.

"Q. What happened then as to his speed? A. He increased it back up to around 70.

"Q. Then what happened about the time he had increased his speed? A. We hit a mule.

"Q. Did you see the mule? A. No sir.

"Q. What were you doing? A. I was lighting a cigarette or fooling with the radio or something I guess, I didn't see it.

"Q. Would lighting a cigarette prevent you from seeing out front? A. Yes sir." (Tr. p. 28-29.)

■ This testimony, without regard to other testimony, pro or con, is, in the Court's opinion, such as to require a submission to the jury of the question as to whether Archie was guilty of proximate contributory negligence.

The fact situation is similar to that in *Chumley v. Anderton,* supra. Defendant Chumley and plaintiff Anderton were engaged in a joint enterprise. Chumley was driving over the streets of Detroit after midnight with **Dr. Anderton** on the front seat with him. Chumley's driving was such that "at one time Dr. Anderton requested Chumley not to drive quite so fast, and he slowed

up, but quickened the speed again''. The car was then approaching a certain safety zone at an intersection. At that intersection Chumley undertook to pass around the left of a car in front of him and crashed. Dr. Anderton sued him, and recovered for injuries thereby received. In disposing of the case the Court said that the proximate cause of the accident became operative at the time Chumley started to pass the car in front and the accident almost immediately followed. The Court thought that under these circumstances it was not unreasonable to conclude that Anderton was not guilty of any act of omission or commission that ''would have prevented or tended to prevent the collision''.

The judgment of the Court of Appeals and of the Circuit Court will be reversed, and the cause remanded to the Circuit Court for a new trial. The costs of the appeal will be adjudged against Yates. The costs of the lower Court will await final disposition of the case there.